NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 22

No. 2019-077

| | |
|---|---|
| Wayne Doncaster & Elizabeth Doncaster | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, Civil Division |
| | |
| John A. Hane, Pam Hane & Town of Irasburg | January Term, 2020 |

Robert R. Bent, J.

Stephen F. Coteus of Tarrant, Gillies & Richardson, Montpelier, for Plaintiffs-Appellees.

Michael J. Straub, Burlington, for Defendants-Appellants John A. Hane and Pam Hane.

Sara Davies Coe of May & Davies, Barton, for Defendant-Appellant Town of Irasburg.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** This is a dispute over access to a segment of road that extends across defendants-appellants' property and onto plaintiffs-appellees' property. The civil division of the superior court held that plaintiffs had the right to use the road because it was a class 4 town highway that was never discontinued. Defendants argue that the highway was discontinued by operation of Act 178, Vermont's ancient-road law, when the town did not include it on the town highway map by July 1, 2015. We affirm.

¶ 2. The following facts are drawn from the factual statements accompanying the parties' motions for summary judgment as well as the trial court's findings and are undisputed except where noted. The parties own adjoining parcels of real property in Irasburg, Vermont.

Plaintiffs Wayne and Elizabeth Doncaster purchased their 450-acre property in 1958. Plaintiffs' property is divided roughly in half by a hillside and the road that is at issue in this dispute, the so-called Howe Segment, which runs along the flat ridge above the hillside. Plaintiffs' house and farmstead is located on the southeast portion of plaintiffs' property, which they access from Hillandale Road. The northwest portion of plaintiffs' property is mostly forested. Plaintiffs have always accessed the northwest portion by way of Town Highway 14 and the Howe Segment. Plaintiffs have periodically used the Howe Segment for logging and other purposes.

¶ 3.    Defendants John and Pam Hane own the land to the north and west of plaintiffs' parcel. Defendants purchased their property in 1999. They access their property using Town Highway 14, the Howe Segment, and a private driveway that diverges to the west and northwest from the Howe Segment.

¶ 4.    The Howe Segment was laid out as a town highway in 1866 as "A Road Near Silas Howe" by the selectboard of the Town of Irasburg. In 1867, a certificate of opening formally opened the road to public use. The Howe Segment extends in a straight line to the southwest from what appears on the town highway map to be the terminus of Town Highway 14. The Howe Segment enters defendants' property and continues parallel to the boundary between defendants' property and plaintiffs' property. It then enters plaintiffs' property and continues for several hundred feet to its end at a cellar hole in the middle of a field where the former Howe farmstead was located.

¶ 5.    In or about September 2015, plaintiffs began using the Howe Segment for logging for the first time since 2005. Defendants erected a locked gate across the Howe Segment and refused to allow plaintiffs to use the road. Plaintiff Wayne Doncaster sought assistance from town officials to have the road unblocked but was unsuccessful.

¶ 6.    In April 2016, plaintiffs filed a petition for declaratory judgment against defendants and the Town in the civil division of the superior court. In May 2017, plaintiffs moved for

summary judgment, asserting that the Howe Segment is a class 4 town highway that was visibly in use and therefore was not discontinued by operation of Act 178 when the town failed to include it on the town highway map by July 1, 2015. They alternatively claimed that if it had been discontinued, they retained a private right-of-way over the former town highway. Plaintiffs sought damages of $3883, representing the losses they incurred when defendants blocked the road and prevented plaintiffs from bringing their wood chips to market.

¶ 7. Defendants cross-moved for summary judgment. They did not dispute that the Howe Segment had been a town highway, but argued that there was no clearly observable physical evidence that it had been used by the public. Thus, they claimed, it was an "unidentified corridor" that was discontinued by operation of Act 178. They further claimed that Act 178 discontinued all town highways that were not on the town highway map by July 1, 2015, and therefore even if the Howe Segment was not an unidentified corridor, it was discontinued because town officials never placed it on the map. Defendants argued that plaintiffs did not retain a private right-of-way over the Howe Segment because they had adequate alternative access to their back acreage.

¶ 8. The Town also filed a cross motion for summary judgment, arguing that the Howe Segment was never a town highway, or alternatively that it was discontinued by operation of Act 178.

¶ 9. In March 2018, the trial court granted partial summary judgment in favor of plaintiffs. It concluded that there was no genuine dispute that the Howe Segment was properly laid out in 1866 as a town highway. It further concluded that because there was clearly observable physical evidence of use of the Howe Segment in the form of tire tracks, the road was not an unidentified corridor that was discontinued by Act 178. The court noted that it was unclear whether the physical evidence existed prior to 2015 and stated it would hold a hearing on the issue if that fact was in dispute.

¶ 10. Both parties moved for reconsideration. Plaintiffs argued that they were entitled to full judgment in their favor because the photographs and other evidence they submitted with their summary judgment motion showed that there was physical evidence of use of the Howe Segment for many years prior to 2015. They also asked the court to rule that the Howe Segment was a class 4 town highway. For their part, defendants argued that: the relevant date for clearly observable physical evidence was July 1, 2010; the physical evidence, including a culvert maintained by the Doncasters and a locked gate, showed that the Howe Segment was closed to public use and was not maintained by the Town; and the Town's failure to include the Howe Segment on the town map by July 2015 was evidence that there was no public use.

¶ 11. The court denied plaintiffs' request for summary judgment because it determined there was a factual dispute regarding the appearance of the road. It disagreed with defendants' argument that the Town's failure to place the road on the town highway map by July 1, 2015 was evidence that it was not a public highway and declined to include the map in evidence. The court also rejected defendants' argument that the road was not public because portions of it had been maintained by the Doncasters, stating that "the relevant inquiry is whether a casual observer would be able to determine from merely looking at a way whether it was a road in public use."

¶ 12. The court held an evidentiary hearing and a site visit in August 2018. Based on its own observations and the testimony of witnesses, it found that from at least 1963 to 2015, the Howe Segment was clearly observable by physical evidence of its use as a highway or trail. It found that the road was used mostly as a trail, which it defined as a beaten path through rough country. The road looked more like a highway when it was improved by plaintiffs every decade or so for the purpose of logging. It became overgrown between logging sessions but was passable by a motor vehicle at all relevant times. The court therefore concluded that the Howe Segment was not an unidentified corridor and remained a class 4 town highway. It ordered the Town to

4

recognize the Howe Segment as a class 4 town highway and directed the parties to remove all gates and any items of personal property obstructing the road. Defendants appealed.

¶ 13. On appeal, defendants argue that Act 178 operated to discontinue all unmapped town highways, including the Howe Segment, after July 1, 2015. Because the Town of Irasburg did not act to place the Howe Segment on the town highway map by that date, they claim, the Howe Segment was discontinued even if it did not qualify as an unidentified corridor under the Act. Alternatively, defendants argue that the Howe Segment qualified as an unidentified corridor because there was no physical evidence that it was used by the public.* We conclude that both arguments are without merit.

I.

¶ 14. We first address defendants' argument that the trial court erred in concluding that Act 178 operated only to discontinue unidentified corridors and not any other town highways that were unmapped as of July 1, 2015. The court's interpretation of the statute is a question of law that we review without deference. First Quality Carpets, Inc. v. Kirschbaum, 2012 VT 41, ¶ 15, 192 Vt. 28, 54 A.3d 465.

¶ 15. Act 178 was enacted in 2006 "to quell the uncertainty that the existence of ancient roads places on private property rights." Town of Bethel v. Wellford, 2009 VT 100, ¶ 7, 186 Vt. 612, 987 A.2d 956 (mem.); see E. Goldwarg, Note, Known Unknowns: Ancient Roads in Northern New England, 33 Vt. L. Rev. 355, 368-70 (2008) (explaining that disputes over legally existing but physically invisible town highways prompted real estate industry to advocate for legislation to quiet title to ancient roads). Under Vermont common law, once a town properly laid out a highway

---

* Appellee Town makes similar arguments in its brief and asks this Court to reverse the trial court's decision. "An appellee seeking to challenge aspects of a trial court's decision must file a timely cross-appeal, unless, of course, the party was content with the final order below." Huddleston v. Univ. of Vt., 168 Vt. 249, 255, 719 A.2d 415, 419 (1998) (citation omitted). Because the Town did not appeal the court's ruling, we do not consider the merits of its claims of error. In re Snyder Grp., Inc. PUD Final Plat, 2020 VT 15, ¶¶ 6-7, __ Vt. __, __ A.3d __.

according to statute, the highway continued to exist forever even if it was unused or abandoned. See Capital Candy Co. v. Savard, 135 Vt. 14, 16, 369 A.2d 1363, 1365 (1976) (holding mere abandonment insufficient to discontinue public highway because statutory procedure for discontinuance must be followed); cf. Lague, Inc. v. Royea, 152 Vt. 499, 501, 568 A.2d 357, 358 (1989) ("We have been clear that an easement acquired by deed cannot be extinguished by nonuse alone, no matter how long it continues."). After a series of prominent cases between towns and landowners drew attention to the problem of ancient town highways, the Legislature passed Act 178. The Act created a procedure for towns to locate what it termed "unidentified corridors" and either discontinue or reclassify them by July 1, 2015. 2005, No. 178 (Adj. Sess.), § 1.

¶ 16.   As amended, the Act defined unidentified corridors as follows:

> Unidentified corridors are town highways that:
>
>   (i) have been laid out as highways by proper authority through the process provided by law at the time they were created or by dedication and acceptance; and
>
>   (ii) do not, as of July 1, 2010, appear on the town highway map prepared pursuant to section 305 of this title; and
>
>   (iii) are not otherwise clearly observable by physical evidence of their use as a highway or trail; and
>
>   (iv) are not legal trails.

2007, No. 158 (Adj. Sess.), § 2 (codified at 19 V.S.A. § 302(a)(6)(A)).

¶ 17.   The Act authorized towns to enter private property containing unmapped town highways to determine whether clearly observable physical evidence existed. 19 V.S.A. § 302(a)(6)(B). When the town located an unidentified corridor, it could reclassify it as class 1, 2, 3, or 4 highway or legal trail using the statutory reclassification procedure. Id. § 302(a)(7). If the town did not reclassify an unidentified corridor by July 1, 2015, the unidentified corridor would be discontinued and the right-of-way would belong to the owner of the adjoining land. Id.

6

§ 302(a)(6)(G). The Act also created a procedure for towns to vote to immediately discontinue all unidentified corridors before July 2010. Id. § 305(h).

¶ 18. The statute further provided that "[a]ll class 1, 2, 3, and 4 town highways and trails shall appear on the town highway maps by July 1, 2015." Id. § 305(c). Defendants argue that because the Act does not state a consequence for a town's failure to include all highways on the map by July 1, 2015, the statutory language is ambiguous, and we must look beyond the plain language to discern the Legislature's intent. Defendants claim that legislative history demonstrates that the Legislature intended for all class 4 town highways to be discontinued on July 1, 2015 if they were not included on the map by that date.

¶ 19. "Our paramount goal in statutory construction is to give effect to the Legislature's intent." Burr & Burton Seminary v. Town of Manchester, 172 Vt. 433, 436, 782 A.2d 1149, 1152 (2001). "The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332 (mem.). This Court will not insert "an implied condition into a statute unless it is necessary in order to make the statute effective." Brennan v. Town of Colchester, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999) (quotation omitted).

¶ 20. Defendants ask this Court to insert a consequence into § 305(c) for a town's failure to include a highway on the map by July 1, 2015. "It is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective." Huntington v. McCarty, 174 Vt. 69, 73, 807 A.2d 950, 954 (2002) (quotation and emphasis omitted). Defendants' proposed interpretation is unnecessary to make the statute effective. Act 178 was designed to eliminate unidentified corridors—that is, town highways that were not visibly used as rights-of-way—and it plainly spells out the consequence for failing to reclassify an unidentified corridor by July 2015. See 2005, No. 178 (Adj. Sess.), § 1 (codified at 19 V.S.A. § 302(a)(6)(G)) (providing that unidentified corridors are discontinued if not reclassified by July

7

1, 2015). If this Court interpreted § 305(c) to mean that all unmapped town highways were discontinued after that date, the specific provision for discontinuance of unidentified corridors would be surplusage. "We presume that language is inserted advisedly and that the Legislature did not intend to create surplusage." McMurphy v. State, 171 Vt. 9, 12, 757 A.2d 1043, 1046 (2000).

¶ 21. Furthermore, although defendants argue that a town's failure to comply with § 305(c) would affect only class 4 highways, their interpretation of the statute would logically require a conclusion that all highways that were not included on a town highway map on July 1, 2015 were discontinued by operation of Act 178. Thus, if a town accidentally omitted a portion of a numbered state highway route from its map, that portion of the highway arguably would be automatically discontinued and the land would belong to the adjoining landowners. It is highly unlikely the Legislature intended to bring about such a drastic and potentially disruptive result by implication.

¶ 22. Defendants argue that the summary of the Act prepared by the Office of Legislative Council states that "[i]f an unidentified corridor or any other highway or trail does not appear on a town highway map by July 1, 2015, it is discontinued and belongs to the owners of the adjoining lands." Act summaries may be helpful in deducing legislative intent where the plain language of the statute is unclear, but they are "not a direct statement of the Legislature's intent." State v. Kenvin, 2011 VT 123, ¶ 25 n.3, 191 Vt. 30, 38 A.3d 26, overruled on other grounds by State v. Aubuchon, 2014 VT 12, ¶ 21, 195 Vt. 571, 90 A.3d 914. Where, as here, "the meaning of the disputed statutory language is unambiguous and resolves the conflict without doing violence to the legislative scheme, we accept the plain meaning as the intent of the Legislature without looking further." Town of Killington v. State, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001) (quotations omitted); see also Aubuchon, 2014 VT 12, ¶ 22 (explaining that act summary's statement that legislative act was intended to "clarify" law did not alter conclusion based on plain language of

8

statute that act was amendment, rather than clarification). We agree with the trial court that the plain language of Act 178 discontinued only unidentified corridors that were not reclassified by July 1, 2015. It did not discontinue other types of town highways, even if those highways were not included on the town highway map by that date.

II.

¶ 23. Defendants alternatively argue that the Howe Segment is an unidentified corridor for two reasons. First, they claim that under Act 178, all unmapped town highways were unidentified corridors unless town officials visited them between July 2010 and July 2015 and determined that clearly observable physical evidence of their use existed. According to defendants, only town officials had the power to evaluate the physical evidence, and only during this five-year period. Because the Town of Irasburg did not visit the Howe Segment to investigate whether physical evidence of use existed, defendants claim that the road is an unidentified corridor as a matter of law and the trial court lacked authority to review the evidence at a later date. Second, defendants argue that the court erred in finding that there was clearly observable physical evidence of use as a highway or trail because there was no evidence of use by the general public.

¶ 24. We see no indication in the record that defendants argued below that the Town had sole authority to assess whether physical evidence of use of the Howe Segment existed or that the trial court lacked the power to review the physical evidence after July 1, 2015. Defendants therefore failed to preserve these arguments for our review. See Follo v. Florindo, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230 ("In general, issues not raised at trial are unpreserved, and this Court will not review them on appeal."); see also V.R.A.P. 28(a)(4)(A) (stating that appellant's brief must indicate how issues were preserved for appeal).

¶ 25. However, defendants did adequately raise the question of at what point in time physical evidence of use had to exist for an unmapped highway to be disqualified as an unidentified corridor. The trial court concluded that July 1, 2015 was the operative date for evaluating physical

9

evidence of use. On appeal, both plaintiffs and defendants argue that the operative date is actually July 1, 2010. The structure of the statute leads us to the same conclusion. As set forth above, the Act defines unidentified corridors in part as those highways that "(ii) do not, as of July 1, 2010, appear on the town highway map prepared pursuant to section 305 of this title; and (iii) are not otherwise clearly observable by physical evidence of their use as a highway or trail." 19 V.S.A. § 302(a)(6)(A)(ii)-(iii). Although subsection (iii) does not specifically state that the physical evidence had to exist on July 1, 2010, we believe this is the operative date the Legislature intended because of its placement earlier within the definition of unidentified corridors and because the Legislature did not specify a different date.

¶ 26. We nevertheless affirm the trial court's conclusion that the Howe Segment was not an unidentified corridor because it found that there was clearly observable physical evidence of use of the Howe Segment on all potentially relevant dates, including July 2010. We review the court's factual findings in the light most favorable to the prevailing party below without considering the effect of modifying evidence. In re M.B., 2004 VT 58, ¶ 6, 177 Vt. 481, 857 A.2d 772. We will only reverse factual findings if they are clearly erroneous, meaning that there is no credible evidence in the record to support them. Alberino v. Balch, 2008 VT 130, ¶ 7, 185 Vt. 589, 969 A.2d 61. As explained below, the court's findings about the state of the Howe Segment in 2010 are supported by credible evidence.

¶ 27. The court found that the Howe Segment was visibly passable by a motor vehicle at all relevant times and was "substantially more than just a path." It found that from at least 1963 through 2015, the Howe Segment was clearly visible by physical evidence of its use as a highway or trail. The Howe Segment was level in grade, had a stone wall running along its east side, and passed over a substantial culvert that had been in place for many years. Aerial photographs through 2008 showed the road to be observable from the air. The court found that during 2010 specifically, the highway "would have been visible as tire tracks on a grassed over way without bare dirt." The

10

court found that the physical evidence showed use at least as a trail in 2010 and all other relevant times.

¶ 28. The court's findings are supported by photographs admitted into evidence by the parties as well as testimony from witnesses on both sides. During his testimony, plaintiff Wayne Doncaster was shown pictures taken of the Howe Segment in 1996 and 2006, which depicted a dirt and gravel track with a strip of grass growing down the middle. He testified that the road had a similar appearance "right up until 2009 or '10." Defendant Pam Hane testified that in 2010, there were tire tracks in grass on the Howe Segment, although there was no bare dirt. Barbara Ross, a relative of plaintiffs who lives nearby, testified that she traveled over the Howe Segment at various points in the 2000s to collect stones and firewood. She recalled that the road was always passable by a pickup truck or regular car, although there might be grass growing in the middle of it. Similarly, Norman Moreau, a retired game warden who patrolled the area from 1962 to 1996, testified that he frequently traveled the road during hunting season to enforce fish and game laws. He described the Howe Segment as "a class 4 road." After his retirement, Moreau regularly hunted on plaintiffs' land. He stated that he had been able to drive his pickup truck to the cellar hole in plaintiffs' field "right up until" defendants installed their gate in 2015. He described the road in recent years as having visible tire tracks and ruts, and a stone wall running along one side. The above evidence supports the court's findings that there was clearly observable physical evidence of use of the Howe Segment as a highway or trail in 2010.

¶ 29. Defendants contend that the above evidence is insufficient to disqualify the Howe Segment as an unidentified corridor because there was no physical evidence of its use by the general public, a requirement they claim is implied by the statute's use of the term "highway." They argue that the evidence showed that plaintiffs maintained the road instead of the Town and no one other than the parties or their invitees used the road. Because there is no evidence of public use of the road, they claim, the road is an unidentified corridor.

11

¶ 30. As we held in Bartlett v. Roberts, § 302(a)(6)(A)(iii) requires only physical evidence of use of a legally existing highway as a right-of-way to remove it from the category of unidentified corridors. 2020 VT 24, ¶ 16, __ Vt. __, __ A.3d __. It is unnecessary, for the purpose of the definition, to identify the users. Id. We explained:

> [Subsection 302(a)(6)(A)(iii)] is clearly designed to exclude from the category of unidentified corridors those legally existing town highways that show visible signs of use as rights-of-way by persons in vehicles, on foot, or by other modes of conveyance. We reject plaintiff's argument that there is an implied requirement that the physical evidence demonstrate use by the general public, rather than merely the adjoining landowners, to qualify as "use as a highway." The identity of the users is irrelevant because a town highway is a public right-of-way that anyone, including the adjoining landowner, has a right to use. . . .

> . . . Once a highway is laid out according to law, it becomes a public road, and those who use it are using it as a public road. This includes adjoining landowners, who have the same right to use the road as other members of the public.

Id. (citations omitted). For this reason, the trial court's finding that there was clearly observable physical evidence of use of the Howe Segment by vehicles during the relevant time period is sufficient to remove the road from the category of unidentified corridors.

¶ 31. The sole case cited by defendants in support of their argument, Kirkland v. Kolodziej, 2015 VT 90, 199 Vt. 606, 128 A.3d 407, is inapposite because it did not involve a claim that a road was an unidentified corridor that had been discontinued by Act 178. Rather, the question in Kirkland was whether the road at issue had ever been a town highway in the first place. Evidence of who maintained the road was relevant in Kirkland because the plaintiffs argued, among other theories, that the road had become a town highway by common-law dedication and acceptance, which required "evidence that the town has assumed the responsibility of maintenance and repair of the highway or otherwise has exercised control over the highway." Id. ¶ 38.

¶ 32. In this case, by contrast, it was undisputed that the Howe Segment was properly laid out as a town highway in 1866. The only relevant question was whether there was physical

12

evidence of its <u>use</u> as a highway or trail in July 2010. As we explained in <u>Bartlett</u>, because towns are not obligated to maintain class 4 highways or trails, the fact that a town did not maintain a road is "not determinative of whether it was used as a highway." <u>Bartlett</u>, 2020 VT 24, ¶ 24. Because the trial court's findings that the Howe Segment was visibly being used as a highway or trail in July 2010 are supported by the record, we affirm its conclusion that the road was not an unidentified corridor that was discontinued by Act 178.

<u>Affirmed</u>.

FOR THE COURT:

Associate Justice