Filed 07/23/21

## STATE OF VERMONT

**SUPERIOR COURT**                                                    **CIVIL DIVISION**
**ADDISON UNIT**                                              Docket No. 175-8-19 Ancv

**HELMER KOLB and**
**MARY KORB,**
        **Plaintiffs,**


        v.


**THE TOWN OF PANTON,**
        **Defendant,**


        v.


**JOHN H. VISKUP, DMD,**
**TRUSTEE OF THE JOHN H. VISKUP TRUST,**
        **Third Party Defendant**

### Decision on Motions for Summary Judgment


Plaintiffs Helmer and Mary Korb (hereinafter Korb) own property on the shore of Lake Champlain on Turkey Lane in the Town of Panton. Turkey Lane is a Town highway. Its length is disputed in this lawsuit. John H. Viskup, Trustee of the John H. Viskup Trust (hereinafter Viskup), also owns property on the shore of Lake Champlain. The Viskup property is on the opposite side of the disputed portion of Turkey Lane from the Korb property. The Town claims that the Town highway runs all the way to Lake Champlain between the Korb and Viskup properties. Korb and Viskup claim that the Town highway stops 105 feet from the lake, and that they are abutters of the segment between the end of the developed portion of Turkey Lane and the lake.

Korb filed a Motion for Summary Judgment against the Town, and the Town filed a responsive Motion for Summary Judgment against Korb and Viskup. Oral argument was heard on June 22, 2021. Based on the undisputed material facts, the court sets forth the following facts and conclusions of law.

### Facts

Lake Road runs parallel to the shore of Lake Champlain several hundred feet away from the lake. A "Survey of Highway" dated July 19, 1789 and recorded on May 20, 1790 in the Panton Land Records describes a four-rod wide right of way running from Lake Champlain to the Main Road (which is the road now known as Lake Road). In 1900, the Town Selectboard approved a "Petition for Opening Highway" from what is now Lake Road to Lake Champlain. It is dated September 17, 1900 and was recorded on September 25, 1900 in the Panton General

1

Records. It describes a four-rod wide road running from the high-water mark of Lake Champlain to Lake Street. Thus, as of 1900, a Town highway was properly laid out on the full length of the distance between what is now Lake Road and the highwater mark of Lake Champlain. It has never been formally discontinued or altered although apparently the developed part of the road jogs to the left in a southwest direction approximately 300 feet from the lake, to serve other residences, rather than proceeding in a straight line.

In 1931, the State of Vermont began offering state aid to towns for the improvement and maintenance of their town roads. 1931, No. 86. Each town was required to submit a map of its roads to the state and certify the distance of the roads in order to receive the state aid. The revised Panton highway map for 1931 shows "Town Highway 11" running from Lake Street toward Lake Champlain for a distance of 0.3 miles. The depiction of it stops short of going all the way to Lake Champlain. Since then, other periodic Town highway maps for purposes of state aid have continued to show Town Highway 11 as 0.3 miles long and stopping short of Lake Champlain. Turkey Lane is Town Highway 11.

Turkey Lane is a Class 3 road. While it is maintained by the Town to a point near the lake, the last segment of the highway as described in the 1790 survey and 1900 opening has not been improved by the Town. There is 105 feet of "trail" between the end of the 0.3-mile segment and Lake Champlain. It is unmarked and does not have a roadbed and is unmaintained by the Town. The evidence of use is disputed, but the Town has produced evidence that it is clearly observable as a path or trail and has been and continues to be used by the general public for access to Lake Champlain for purposes including but not limited to fishing, birdwatching, sightseeing, boat launching, and recreation. Members of the public cannot drive vehicles all the way to the lake, but park and walk down the trail to the lake. It has only periodically and temporarily been used by vehicles privately hired and paid for by Mr. Viskup for the purpose of bringing in equipment, material, and labor in connection with improvements he has made to the Viskup property.

**Conclusions of Law**

Korb and Viskup argue that despite the fact that a Town highway four rods wide running all the way to the lake was created by a survey in 1789, formally opened in 1900 as a Town highway, and never discontinued, the Town "abandoned" its right to claim the last 105 feet in two ways: (1) by certifying and submitting maps from 1931 to the present showing a distance for Turkey Lane of only 0.3 miles that did not go all the way to the lake, and (2) by failing to timely preserve the disputed segment of Turkey Lane as an ancient road under the requirements of Act 178.

<u>State Aid Maps</u>

The law prescribes how town highways may be discontinued. "[F]or a municipality to relinquish its claim of title to a legally created highway, it must make some affirmative act to discontinue the road in question." *Benson v. Hodgdon*, 2010 VT 11, ¶ 17, 187 Vt. 607 (mem.). Mere "passive abandonment," "lack of maintenance by the municipality or use by the public," or even "acquiescence to another use … is not enough to extinguish public ownership." *Id.* ¶ 15.

2

To determine whether an alleged discontinuation of a highway was valid, courts look at the statutory requirements that were in place at the time the discontinuation purportedly took place. "The process for discontinuing a highway is wholly statutory and the method prescribed must be substantially complied with or the proceedings will be void." *Id.* (citing *In re Bill*, 168 Vt. 439, 442 (1998)).

Korb and Viskup allege that the Town's omission of the disputed segment from annually created Town highway maps beginning in 1931 was an affirmative act that served to discontinue the highway. Although Town Highway 11 appears on the Town maps, none of the maps appear to show the disputed 105-foot segment. Korb and Viskup characterize the Town's annual submission of state aid maps as the equivalent of a "sworn statement" that the disputed segment "is not a Town highway or trail as [it] has never appeared on a highway map." Pl.'s Resp. to Def.'s Cross-Mot. at 6 (filed Feb. 8, 2021).

The Town highway maps that were created for purposes of obtaining state aid are not surveys. Rather, they are a depiction of roads and distances of improved roads for which state aid is sought for maintenance purposes. 19 V.S.A. § 305–306. Prior to 2006, when Vermont's ancient road legislation first required towns to map "unidentified corridors" in order to put landowners on notice of their existence, there would have been no reason for the Town to include an undeveloped or unmaintained portion of a Town highway, because the Town would not have needed funds to maintain it. In fact, the Town may not request state aid for undeveloped, untraveled highways. 19 V.S.A. § 305(a). In 1931, the first year the Town produced a state aid map, the Legislature passed Act 86, which provided as follows:

> Sec. 2. The selectmen of each town, with the assistance of a representative of the state highway board, shall measure *traveled highways*, not including pent roads, in their respective towns ... and shall on or before the first day of December, 1931, file in the office of the town clerk a report under oath of such measurements and also a map to be furnished by the state highway board showing the location of such highways. The selectmen shall annually thereafter, on oath ... file with the town clerk a description and measurements of all new roads and all roads discontinued, not including pent roads. Highways which are not traveled shall be treated as discontinued roads *as applied to this act.*
>
> ...
>
> Section 4. The highway tax ... shall be reapportioned and repaid to the several towns and incorporated villages upon the basis of road mileage ascertained as provided in sections 2 and 3 of this act.

1931, No. 86, §§ 2, 4 (emphasis added). The original stated purpose of the mapping requirement was to accurately record all "traveled highways" so that state aid to highways would be apportioned fairly based on the total mileage of roads in a town that were actually being used, and "untraveled highways" were treated as if they did not exist for purposes of allocating funds. *Id.* Act 86 notes that untraveled roads "shall be treated as discontinued roads as applied to this act," and by its plain language, it does not purport to provide a new method for the

3

discontinuation of roads. See *Doncaster v. Hane*, 2020 VT 22, ¶ 20 ("It is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective."); see also *State v. Doe*, 2020 VT 78, ¶ 10 ("If a statute's plain language clearly indicates the Legislature's intent, we implement the statute according to that plain language.").

When the Legislature enacted Act 86 in 1931, the detailed statutory requirements for discontinuing a highway did not change. See General Laws of Vermont, 1917, Tit. 21, Ch. 191, at 738–57 (1917) (hereinafter General Laws (1917)); Public Laws of Vermont, 1933, Tit. 20, Ch. 202, §§ 4749–4752, at 786–802 (1933) (hereinafter Public Laws (1933)). At the time, those requirements included a petition to the selectboard by "three or more freeholders in a town," notice to adjacent landowners, "examination of the premises," and a hearing. General Laws, Tit. 21, Ch. 191, §§ 4396–4399 (1917); Public Laws, Tit. 20. Ch. 202, §§ 4749–4752 (1933). Following a decision by the selectboard, "[i]f the selectmen ... decide to discontinue a highway, such discontinuance shall be in writing setting forth definitely such highway," and "[t]he selectmen shall, within sixty days after such examination and hearing, return the original petition with a report of their doings thereon ... to the town clerk's office, to be kept on file therein, and their order ... discontinuing a highway, shall be recorded by the clerk." General Laws, Tit. 21, Ch. 191, §§ 4398–4399 (1917); Public Laws, Tit. 20, Ch. 202, §§ 4751–4742 (1933). The selectboard also seems to have had the power to initiate proceedings without a petition, "as the convenience of the inhabitants and the public good require." General Laws, Tit. 21, Ch. 191, § 4388 (1917); Public Laws, Tit. 20, Ch. 202, § 4741 (1933).[1]

"Laws relating to a particular subject 'should be construed together and in harmony if possible," and "we will not interpret a single word or phrase in isolation from the entire statutory scheme." *State v. Blake*, 2017 VT 68 ¶ 9, 205 Vt. 265. Construing the mapping requirement in harmony with the formal, somewhat burdensome statutory requirements to discontinue a highway, it is clear the Legislature never intended the mapping requirement of Act 86 to provide an alternative route to highway discontinuation. Instead, the mapping requirement served the wholly different purpose: ensuring fair and accurate distribution of state aid to town highways for maintenance of traveled portions of roads. Moreover, the Supreme Court's interpretation of the historical statutes governing highway discontinuation has been strict, even when towns took affirmative steps and attempted to comply with the statutory procedure for discontinuation. See, e.g., *In re Bill*, 168 Vt. 439, 445 (1998) (town land records contained an order by the 1926 selectboard declaring a road "officially closed," but the purported discontinuation was void because selectboard had not sufficiently complied with statutory requirements).

Finally, State law still requires the Town to submit annual maps of its highways to ensure that state highway funds are distributed accurately. 19 V.S.A. §§ 305–306. Section 305(c), added in 2006 as part of Vermont's ancient roads law, states that "All class 1, 2, 3, and 4 town highways and trails shall appear on the town highway maps by July 1, 2015." 19 V.S.A.

---

[1] The current statutory requirements to discontinue a road are substantially similar to the historical requirements, although the number and identity of the petitioners has changed from "three or more freeholders in the town" to "[p]ersons who are either voters or landowners" numbering at least five percent of the voters in the town; some specific details of the notice requirement have changed as well. 19 V.S.A. § 708(a); see generally 19 V.S.A. §§ 708–711.

4

§ 305(c). However, the statute does not contain any explicit consequence if a Town neglects to include a highway on a town map, and the Supreme Court has declined to insert one. *Doncaster*, 2020 VT 22, ¶ 20. Section 305(c) certainly does not displace the statutory requirements for highway discontinuation, codified at 19 V.S.A. §§ 708–711.

Korb and Viskup are not able to point to any direct action taken by the Town at any point to discontinue any part of Town Highway 11. The Town's passive omission of the disputed segment from Town maps is not enough. The Town's creation of state aid maps over many decades—during which time a trail to the lake still existed and enabled public use by walking access to the lake—simply does not constitute "substantial[] compl[iance] with the statutory method for discontinuance," and the Town's rights to the disputed segment cannot be extinguished on that basis. *Benson*, 2010 VT 11, ¶ 15.

### Act 178

Korb and Viskup argue that even if the Town retained its right of way over the disputed segment despite omitting it on state aid maps, that changed in 2006, when the Legislature passed Act 178, Vermont's ancient road law. According to Korb and Viskup, Act 178 put the Town on notice that it must "map it or lose it." Pl.'s Resp. to Def.'s Cross-Mot. at 2.

In *Doncaster*, the Court clarified that although Act 178 required towns to map all "unidentified corridors" prior to July 1, 2015, that requirement did not apply to roads for which there was "clearly observable ... physical evidence of their use as a highway or trail" as of July 1, 2010. 2020 VT 22, ¶ 22; see also *Bartlett v. Roberts*, 2020 VT 24, ¶ 16. Under Act 178, towns lost their rights to unmapped "unidentified corridors" on July 1, 2015, but retained their rights over unmapped highways. *Doncaster*, 2020 VT 22, ¶ 22; *Bartlett*, 2020 VT 24, ¶13, n. 2.

The legislative purpose of Act 178 was to "quell" disputes about the status of invisible "paper roads" or "unidentified corridors": historical rights of way that were properly laid out by law, but had gone unmaintained and unused for so long that no property owner could fairly be considered to have notice of their continued existence. *Doncaster*, 2020 VT 22, ¶ 15. Act 178 defines "unidentified corridors" as follows:

Unidentified corridors are town highways that:

(i) have been laid out as highways by proper authority through the process provided by law at the time they were created or by dedication and acceptance; and

(ii) do not, as of July 1, 2010, appear on the town highway map prepared pursuant to section 305 of this title; and

(iii) are not otherwise clearly observable by physical evidence of their use as a highway or trail; and

(iv) are not legal trails.

2007, No. 158 (Adj. Sess.), § 2 (codified at 19 V.S.A. § 302(a)(6)(A)). The Act required towns to locate and map all such "unidentified corridors" by July 1, 2015. After July 1, 2015, all

5

unmapped "unidentified corridors" were discontinued and the right of way reverted to the owner of the adjoining land. 19 V.S.A. § 302(a)(6)(G).

Physical evidence of use as a highway or trail includes physical evidence of use by anyone, including adjoining landowners. "Subsection 302(a)(6)(A)(iii) is clearly designed to exclude from the category of unidentified corridors those legally existing town highways that show visible signs of use as rights-of-way by persons in vehicles, on foot, or by other modes of conveyance." *Bartlett*, 2020 VT 24, ¶ 16. "The identity of the users is irrelevant because a town highway is a public right-of-way that anyone, including the adjoining landowner, has a right to use … Once a highway is laid out according to law, it becomes a public road, and those who use it are using it as a public road. This includes adjoining landowners, who have the same right to use the road as other members of the public." *Doncaster*, 2020 VT 22, ¶¶ 16–17.

Act 178 did not extinguish the Town's rights to the disputed segment, because there is physical evidence of the disputed segment's continuous use as a trail going back several decades. Not only has it been used by the adjoining property owners (which, under *Doncaster*, would be enough), the Town also presented evidence that the disputed segment has continued to provide lake access to the general public. In this case, there was a developed road that was clearly a Town highway, at the end of which there was a trail that continued to the lake, enabling public access to Lake Champlain, a public resource. These are observable signs sufficient to put anyone interested on notice that the Town might have a right of way all the way to the lake, connecting the improved portion of Town Highway 11 and the lake. These characteristics are sufficient observable signs to put a person on notice of the continuation of the Town Highway. Inquiry in the Town records would make clear that the surveyed and properly laid out right of way runs all the way to the lake and is four rods wide.

Because the disputed segment was "clearly observable" as a highway or trail as of July 1, 2010, it is not an "unidentified corridor." *Doncaster*, 2020 VT 22, ¶¶ 26–28 (affirming trial court's conclusion that a "dirt and gravel track" was not an unidentified corridor under Act 178, because there was "clearly observable evidence of use … on all potentially relevant dates" such as "visible tire tracks and ruts"); *Bartlett*, 2020 VT 24, ¶¶ 6, 16 (finding sufficient evidence of use as a trail when the "gravel and dirt" road was "overgrown and not passable by a passenger car, but could be accessed using an all-terrain vehicle").

Because the segment is not an unidentified corridor, the Town was not required to map it, and the Town's rights to the segment were not extinguished by Act 178.

### "Shoulder issue"

Finally, Korb and Viskup argue that if the Town still has a right of way, the width has been reduced to just twelve feet—wide enough for a trail and not for a road. There is no legal basis on which the Town would have given up any portion of the four-rod width of the highway. Most public roads do not clear or use the entire width of the legal right of way, but lack of development for the full width does not mean that the legal right of way is lost because "a legally existing public highway cannot be taken through adverse possession." *Benson*, 2010 VT 11, ¶ 14. Furthermore, "[a] right-of-way does not lose its legal status as a highway merely because the

6

town has failed to maintain it or because it is impassable by a standard passenger car." *Bartlett*, 2020 VT 24, ¶ 24. The fact that the Town has not continuously used or maintained the disputed segment as a highway cannot shrink the Town's right of way any more than it extinguishes it.

The fact that some of the four-rod right of way was not developed or maintained by the Town does not provide a legal basis to diminish the width of the surveyed right of way, and the Town's four-rod right of way over Town Highway 11 continues all the way to the lake as surveyed and opened in 1900.

## Order

For these reasons, Korb's Motion for Summary Judgment is *denied*, and the Town's Cross Motion for Summary Judgment is *granted*.

The Town's attorney shall prepare a form of judgment.

Electronically signed pursuant to V.R.E.F. 9(d) on July 23, 2021 at 8:23 AM.

Mary Miles Teachout

Mary Miles Teachout
Superior Court Judge