NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 86

No. 24-AP-061

| | |
|---|---|
| Draxxion Talandar | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Elizabeth Manchester-Murphy | October Term, 2024 |

H. Dickson Corbett, J.

Cabot Teachout of DesMeules, Olmstead & Ostler, Norwich, for Plaintiff-Appellant/
  Cross-Appellee.

Laura Bierley, Burlington, and Taleia Barksdale, St. Johnsbury, Vermont Legal Aid, Inc.,
  Burlington, for Defendant-Appellee/Cross-Appellant.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **CARROLL, J.**    Plaintiff Draxxion Talandar appeals from a civil division order granting judgment on the pleadings to defendant Elizabeth Manchester-Murphy and awarding her attorney's fees under Vermont's anti-SLAPP (strategic lawsuit against public participation) statute, 12 V.S.A. § 1041. In his complaint, plaintiff raised claims of defamation and intentional infliction of emotional distress (IIED), alleging that defendant maliciously made a false report of sexual and physical assault to the police that resulted in plaintiff being criminally charged, arrested, and held without bail for almost two years before his ultimate acquittal. On appeal, plaintiff argues that the trial court erred in: (1) concluding that his claims were barred by a common-law absolute privilege for witness communications preliminary to a proposed judicial proceeding and therefore

entering judgment on the pleadings; and (2) granting defendant's special motion to strike his complaint under § 1041(a). We agree that defendant's police report was absolutely privileged and thus affirm the trial court's grant of judgment on the pleadings. While we conclude that plaintiff's challenges to the court's interpretation of 12 V.S.A. § 1041 are without merit, we remand for the court to consider plaintiff's unaddressed constitutional challenges to that statute.

## I. Background

¶ 2.     In December 2019, the State of Vermont charged plaintiff with aggravated sexual assault, sexual assault, aggravated domestic assault, and domestic assault. A jury found him not guilty on all four counts after his criminal trial in September 2022. The following month, plaintiff filed the instant suit against defendant—the complaining witness in that trial.

¶ 3.     Plaintiff's complaint included the following factual allegations. The parties met in 2018 and became engaged in 2019. Their relationship ended in August 2019. Around this time, defendant learned that plaintiff was previously affianced to another woman and had used the same ring in both engagements. Defendant made hundreds of attempts to communicate with plaintiff after their breakup, but he did not respond. In October 2019, defendant falsely reported to law enforcement that plaintiff had sexually and physically assaulted her during their relationship. She did so intentionally and for the purpose of harming plaintiff. As a result of defendant's statements, plaintiff was criminally charged, denied bail, and held in pretrial incarceration for almost two years, and he suffered significant financial and reputational injury.

¶ 4.     Plaintiff's claims of defamation and IIED were based solely on defendant's October 2019 statements to police. He sought $3,000,000 in compensatory, general, and punitive damages.

¶ 5.     Defendant filed a special motion to strike plaintiff's complaint under the anti-SLAPP statute, arguing that it barred his claims because they arose from her exercise of constitutionally protected rights to free speech and to petition the government for redress of grievances with respect to a public issue. See 12 V.S.A. § 1041(a). In the alternative, defendant

2

moved for judgment on the pleadings pursuant to Vermont Rule of Civil Procedure 12(c). She contended that her report to law enforcement was shielded by an absolute privilege for witness statements in connection with a judicial proceeding—namely, plaintiff's criminal trial—and plaintiff therefore could not prevail on his defamation and IIED claims as a matter of law.

¶ 6. Plaintiff opposed both motions. He argued that the anti-SLAPP statute did not preclude his claims or, in the alternative, that this application of the statute would violate his state and federal constitutional rights to access the courts for redress of grievances. He further asserted that defendant's October 2019 statements were not absolutely privileged or that, if they were, this too was an unconstitutional deprivation of his rights of access to the courts.

¶ 7. The court held a hearing on defendant's special motion to strike. It denied plaintiff's request to present evidence but afforded him an opportunity to submit his proffered testimony in the form of an affidavit. In that affidavit, plaintiff swore to the following additional allegations of fact. The parties' relationship came to an acrimonious end in August 2019. After plaintiff broke up with defendant, defendant called, texted, and emailed him hundreds of times. Plaintiff did not reply because he no longer wanted to be with defendant. In subsequent communications, defendant "threatened to put [plaintiff] in jail" if he did not respond to her messages. Plaintiff continued to disregard defendant's attempts to contact him, and, in October 2019, she provided the police with a sworn statement indicating that plaintiff had repeatedly sexually and physically assaulted her during the relationship. Defendant's report was untrue, unsupported by corroborating evidence, and contradicted by her own prior and subsequent statements.

¶ 8. Defendant filed a memorandum opposing plaintiff's arguments and an affidavit in which she in turn averred that her police report was truthful, she never recanted her allegations, and she had no control over the subsequent actions of the police, prosecutor, or criminal court.

¶ 9.    The civil division issued a written order granting both of defendant's motions. First, it concluded that defendant was entitled to judgment on the pleadings because the October 2019 statements giving rise to plaintiff's claims were absolutely privileged.  The court considered the public-policy rationales underlying the absolute privilege for witness statements in connection with judicial proceedings and concluded that they supported extending the privilege to a potential witness's statements to law enforcement prior to the initiation of any legal proceeding.  In doing so, the court looked to the Restatement (Second) of Torts, which provides that "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977).  It further relied on Couture v. Trainer, a relatively recent case in which we drew guidance from the analogous rule for party statements preliminary to a proposed judicial proceeding set forth at Restatement (Second) of Torts § 587.  2017 VT 73, ¶¶ 13-14, 205 Vt. 319, 174 A.3d 1245 (citing Restatement (Second) of Torts § 587).  The court also granted defendant's special motion to strike after engaging in the two-step analysis laid out in the anti-SLAPP statute: it concluded that plaintiff's suit targeted defendant's exercise of constitutionally protected free-speech rights in connection with a public issue and plaintiff had not shown that defendant's exercise was devoid of any reasonable factual support.  See 12 V.S.A. § 1041(a), (e)(1)(A).  The court's order briefly addressed several aspects of plaintiff's two constitutional challenges, but largely dismissed them as inapplicable to the case.  Finally, the court ordered plaintiff to pay $5790 in attorney's fees under § 1041(f)(1), a provision of the anti-SLAPP statute mandating an award of fees and costs to defendant where a special motion to strike is granted.

## II. Analysis

¶ 10.    On appeal, plaintiff contends that, for numerous reasons, the trial court erred in granting defendant's Rule 12(c) motion for judgment on the pleadings and her special motion to strike under the anti-SLAPP statute.[1]  We consider each argument in turn.

### A.  Motion for Judgment on the Pleadings

¶ 11.    Plaintiff challenges the trial court's entry of judgment on the pleadings on several grounds.  He contends that the court erred in concluding that Restatement (Second) of Torts § 588 and Couture v. Trainer supported application of an absolute privilege to defendant's statements, maintaining that a qualified privilege provides the appropriate level of protection for the interests at issue.  Alternatively, plaintiff argues that even if an absolute privilege bars his defamation claim, it does not preclude his IIED claim, and the recognition of an absolute privilege in these circumstances violates his rights under Article 4 of the Vermont Constitution.

¶ 12.    A Rule 12(c) motion calls for the trial court to determine whether the movant is entitled to judgment based on the pleadings—a legal conclusion we review without deference. Politella v. Windham Se. Sch. Dist., 2024 VT 43, ¶ 10, __ Vt. __, 325 A.3d 88; V.R.C.P. 12(c). Like the court below, we assume for purposes of this analysis that "all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom" are true and "all contravening assertions in the movant's pleadings" are false.  Flint v. Dep't of Lab., 2017 VT 89, ¶ 3, 205 Vt. 558, 177 A.3d 1080 (quotation omitted).  We will affirm an entry of judgment under Rule 12(c) only if the nonmovant's pleadings contain no allegations that, if proven, would permit recovery as a matter of law.  Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., 2022 VT 45, ¶ 17, 217 Vt. 195, 287 A.3d 515.

---

[1]  Defendant initially filed a cross-appeal challenging the amount of the fee award, but withdrew it prior to oral argument.

¶ 13. Thus, in reviewing the trial court's judgment on the pleadings, we take the allegations in plaintiff's complaint as true—including the assertion that defendant maliciously presented false claims of physical and sexual assault to the police—and "focus our analysis on the court's conclusions of law."[2] Flint, 2017 VT 89, ¶ 3; see Restatement (Second) of Torts § 619(1) & cmt. a (explaining that "whether the occasion upon which the defendant published the defamatory matter gives rise to a privilege," either qualified or absolute, is question of law for the court). In contrast to a qualified privilege, an absolute privilege cannot be overcome by a showing of malice: it "provides a complete shield against defamation actions" even where the statements at issue were knowingly false and the defendant's motives in making them were malicious. Couture, 2017 VT 73, ¶ 10. As a result, judgment on the pleadings was appropriate if defendant's statements were absolutely privileged and that privilege extended equally to plaintiff's defamation and IIED claims.

¶ 14. "The general doctrine of immunity or privilege for the publication of defamatory matter in the public interest, or in the furtherance of the rights or lawful interests of individuals, may be traced far back in the history of the common law." See C. Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 464 (1909). The privilege stems from a recognition that "the perceived social benefit in encouraging free speech or the discharge of governmental responsibility sometimes outweighs the individual's underlying right to a good reputation," and that, in those circumstances, a defamation claim "may have to yield to a privilege granted the speaker barring recovery of damages for the defamatory statements." Park Knoll Assocs. v. Schmidt, 451 N.E.2d 182, 184 (N.Y. 1983). Whether such a privilege is qualified or

_____

[2] Plaintiff contends that the trial court failed to take the allegations in his complaint as true in ruling on defendant's Rule 12(c) motion. However, this characterization of the court's reasoning is inaccurate because it draws from portions of the order clearly pertaining to defendant's special motion to strike under the anti-SLAPP statute. As discussed in greater detail below, the statute requires courts to evaluate factual allegations under a different standard. See infra, ¶ 46.

absolute is a question of policy because the measure of protection afforded in the circumstances depends on the relative importance of the interests at stake. Veeder, supra, at 464; Rioux v. Barry, 927 A.2d 304, 309 (Conn. 2007).

¶ 15. As the Restatement explains:

"[A]bsolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings . . . . Therefore the privilege, or immunity, is absolute and the protection that it affords is complete. It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.

Restatement (Second) of Torts div. 5, ch. 25, topic 2, tit. B, intro. note; see Torrey v. Field, 10 Vt. 353, 414 (1838) (recognizing that absolute privilege extends "to parliamentary proceedings, proceedings in the state legislatures, and in congress . . . in short, to any one, who, in the course of the discharge of public duty, or in pursuit of private rights, is compelled to participate in the administration of justice, or in legislation"). For almost 200 years, this Court has recognized an absolute privilege for statements within a judicial proceeding relevant to the matter at hand. Couture, 2017 VT 73, ¶ 12; LaPlaca v. Lowery, 134 Vt. 56, 57-58, 349 A.2d 235, 236 (1975).

¶ 16. But "unqualified privilege does not depend on the rigid requirement of a strictly . . . judicial proceeding; its limits are fixed rather by considerations of public policy." Corbin v. Washington Fire & Marine Ins. Co., 278 F. Supp. 393, 396 (D.S.C.), aff'd, 398 F.2d 543 (4th Cir. 1968). This is so because "[t]he cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location." Butz v. Economou, 438 U.S. 478, 512-13 (1978) (concluding that adjudication within federal agency shares sufficient characteristics with judicial process such that participants "should

7

also be immune from suits for damages"). Two of these characteristics have proved particularly salient to courts in considering whether and how to extend the judicial proceedings privilege—including, as relevant here, with respect to witnesses. See id. at 512.

¶ 17.    First is the recognition that "controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree" and "[t]he loser in one forum will frequently seek another" to raise civil claims against the participant in an earlier proceeding. Id. Thus, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," including "reluctan[ce] to come forward to testify." Briscoe v. LaHue, 460 U.S. 325, 333 (1983) (citing Veeder, supra, at 470). Courts extend an absolute privilege to witness testimony because "the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.' " Id. (quoting Imbler v. Pachtman, 424 U.S. 409, 440 (1976) (White, J., concurring)); see Defend v. Lascelles, 500 N.E.2d 712, 715 (Ill. App. Ct. 1986) ("The [judicial proceedings] privilege itself is steeped in public policy: it is uniformly recognized that the judicial system would be best served if persons with knowledge of relevant facts could report those facts to the court without fear of civil liability.").

¶ 18.    Second, "the safeguards built into the judicial process tend to reduce the need for private damages actions" because they serve to "enhance the reliability of information and the impartiality of the decisionmaking process." Butz, 438 U.S. at 512. "[A]bsolute immunity removes the threat of private defamation actions in order to incentivize witnesses to participate candidly and willingly in the proceeding"; thus, "it is crucial that there be some strong deterrent, such as the threat of a perjury prosecution, against abuse of the privilege by the giving of untruthful testimony."[3] Khan v. Yale Univ., 295 A.3d 855, 873 (Conn. 2023).

_____

[3] Plaintiff argues, without meaningful citation, that false statements to law-enforcement officers should not be privileged because it is a crime to make such statements. To the extent this

8

¶ 19. Based on these characteristics, in Vermont and elsewhere, "the scope of the judicial privilege has been gradually extended over time as courts, scholars, and practitioners have taken into account its usefulness in a variety of scenarios connected with the sound administration of justice as that term is broadly understood." Schanne v. Addis, 121 A.3d 942, 948 (Penn. 2015); see, e.g., Dunham v. Powers, 42 Vt. 1, 8 (1869) (concluding that absolute privilege for jurors' defamatory statements during deliberation was "not only in entire harmony with the law, but fitting and necessary, that jurors may discharge their duties without fear or apprehension of prosecution at the suit of parties feeling aggrieved by their verdict"); Mower v. Watson, 11 Vt. 536, 540 (1839) (concluding that there is no "good ground of distinction, as to the extent of [the judicial proceedings] privilege, between counsel and client . . . [and] the privilege of the one should be coextensive with that of the other").

¶ 20. Against this backdrop, we consider plaintiff's argument that defendant's statement to police was only conditionally privileged. It is true that most jurisdictions recognize a qualified privilege for statements made to police by a presumptive witness prior to the institution of criminal charges. See K. Rubery, Reporting Sexual Assault: What Privileges Should Exist in Defamation Suits Stemming from a Police Report?, 50 Fordham Urb. L.J. 907, 918 & n.72 (2023); see, e.g., Fridovich v. Fridovich, 598 So.2d 65, 69 (Fla. 1992) (holding that "defamatory statements voluntarily made by private individuals to the police . . . prior to the institution of criminal charges are presumptively qualifiedly privileged" (footnote omitted)); Zsigray v. Langman, 842 S.E.2d 716, 726 (W. Va. 2020) (concluding that allegedly defamatory statements to police preliminary to criminal proceeding were subject to qualified, rather than absolute, privilege); Gallo v. Barile, 935 A.2d 103, 111 (Conn. 2007) (explaining that "[i]n view of the potentially disastrous consequences

argument is adequately briefed, we reject it: the line of cases recognizing absolute privilege for judicial proceedings do so in part because the possibility of criminal prosecution arising from false testimony is an independent deterrent.

9

that may befall the victim of a false accusation of criminal wrongdoing, we are unwilling to afford absolute immunity" where "qualified immunity affords sufficient protection for those who cooperate with police").

¶ 21.    However, "[s]everal courts have held that even an individual's out-of-court charge or a report to police is absolutely privileged and that the privilege will defeat all claims except a valid claim for malicious prosecution and perhaps a civil rights claim."  D. Dobbs et al., Dobbs' Law of Torts § 539 & n. 13 (2d ed. 2024) (observing that these jurisdictions "treat[] a complaint to police as part of, or at least in preparation for, judicial proceedings" and therefore extend absolute immunity).    Courts adopting this minority rule weigh the same public-policy considerations that led others to apply the qualified privilege, but arrive at a different result— reasoning that "requiring alleged crime victims to rely on the defense of qualified immunity in defamation actions would have detrimental consequences, including potentially permitting criminal defendants to harass and intimidate victims and witnesses who would testify in court," and "[t]he mere possibility of retaliatory defamation claims would also tend to discourage free and unfettered reporting to law enforcement authorities to assist the detection and prosecution of criminal activity."  Ledvina v. Cerasani, 146 P.3d 70, 74 (Ariz. Ct. App. 2006).  This conclusion was forcefully stated by the Supreme Court of New Hampshire in McGranahan v. Dahar:

> The law does not, and should not, allow recovery in tort by all persons accused of crimes and not convicted.  There is no guarantee in our society that only guilty persons will be accused and arrested.  Except in extreme cases, for which malicious prosecution or abuse of process are adequate remedies, a person wrongfully accused of a crime must bear that risk, lest those who suspect wrongful activity be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of interminable litigation.

408 A.2d 121, 128 (N.H. 1979) (citation omitted) (holding that absolute privilege applied to defendant's allegedly defamatory statements to police prior to plaintiff's arrest).

¶ 22.    We find this reasoning sound and join those states applying the minority rule.  As we long ago recognized, "[t]he criminal law does not enforce itself, but requires the agency of some informant to put it in motion."  Ryan v. Orient Ins. Co., 96 Vt. 291, 297, 119 A. 423, 425 (1923) (explaining that "public policy favors the exposure of crime," and it is thus a matter "of public concern that a citizen having reason to believe, or even suspect, that a crime has been committed, be permitted to direct the attention of the prosecuting officer towards its investigation").  Thus, as the Court of Appeals of Michigan explained, "we could not reliably have practical law enforcement if crime victims, or those with knowledge of crimes, were forced to risk a lawsuit upon reporting what they know or what they suffered."  Eddington v. Torrez, 874 N.W.2d 394, 397 (Mich. Ct. App.), appeal denied by 872 N.W.2d 474 (Mich. 2015) (mem.).  While we recognize that individuals have an interest in seeking redress in civil court from those who make defamatory statements against them, this does not outweigh the broader public interest in free and full disclosure to law enforcement of information concerning criminal activity.  This is particularly true given the many procedural safeguards attendant to a criminal trial.  Likewise, in Vermont, it is a crime to "knowingly give[] false information to any law enforcement officer with purpose to implicate another" or "report[] to law enforcement authorities an offense or other incident within their concern knowing that it did not occur."  13 V.S.A. § 1754(a), (b)(1).  The possibility of prosecution under this provision is, in itself, a powerful deterrent against maliciously fictitious police reports.

¶ 23.    As the trial court recognized, we arrived at a corollary conclusion in Couture v. Trainer, a case in which the plaintiff sued the mother of his child for defamation, alleging that she maliciously made false reports of child abuse in statements to the plaintiff's parole officer and in a relief-from-abuse (RFA) petition.  2017 VT 73.  We held that the defendant's communications were absolutely privileged as statements preliminary to or in the context of judicial and quasi-judicial proceedings, finding support for those conclusions in the reasoning of other jurisdictions

11

that follow the minority approach and § 587 of the Restatement. Id. ¶¶ 10-14 (citing Ledvina, 146 P.3d at 73; McGranahan, 408 A.2d at 124) (observing that "[w]e frequently have adopted provisions of the Restatement (Second) of Torts with respect to defamation" (quotation omitted)). Section § 587 is substantially similar to § 588, providing that "[a] party to a private litigation of a private prosecutor . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if the matter has some relation to the proceeding." Restatement (Second) of Torts § 587 (emphasis added); see Restatement (Second) of Torts § 588.

¶ 24. Particularly relevant here is our conclusion in Couture that "[p]ublic policy favors the extension of absolute privilege to statements and recordings made or produced in the context of parole violation reports" because "[u]nhindered communication with parole officers . . . is critical to ensure that members of the public can communicate sensitive and unflattering information to parole officers about parolees without fear of reprisal." 2017 VT 73, ¶ 14. A qualified privilege, we explained, "would not adequately protect against this risk" because "a defamation suit would be able to proceed much further than it would if absolute privilege were applied." Id. Though we recognized the legitimacy of concerns about false reporting, we concluded that "its effects are limited by procedural safeguards in instances where false statements are made in the preliminary steps of a judicial proceeding." Id.

¶ 25. Plaintiff contends that Couture is distinguishable because the statements giving rise to the defamation claim in that case "were made directly to the court by the petitioner in a relief from abuse matter, and . . . also used later during a parole board hearing," whereas defendant in this case made her report to the police "well before the commencement of any judicial proceedings" and "never submitted the statements at issue to a court herself." However, that the defendant in Couture sought an RFA order had no bearing on our analysis of whether her statements to the plaintiff's parole officer were absolutely privileged. See 2017 VT 73, ¶ 14. And

12

we perceive no meaningful difference between statements to a parole officer later used in a parole-board hearing and statements to a police officer later used in a criminal prosecution. In fact, the justification for application of an absolute privilege is more compelling in the latter scenario because the procedural protections afforded by the criminal process are far greater than those attendant to a parole-violation hearing. See Morrissey v. Brewer, 408 U.S. 471, 480 (1972) (recognizing that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations" which "deprive[] an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions"); Relation v. Vt. Parole Bd., 163 Vt. 534, 539, 660 A.2d 318, 321 (1995) (citing Morrissey in assessing due-process challenge to Vermont's parole-revocation procedure). Thus, our reasoning in Couture applies with equal or greater force here.

¶ 26. Plaintiff also argues that an earlier case, Politi v. Tyler, supports the conclusion that in Vermont, witness immunity does extend to statements made outside of court proceedings, even where the challenged statement is made with the expectation of use in a future court proceeding. 170 Vt. 428, 751 A.2d 788 (2000). We disagree. The defendant in that case performed a psychological evaluation, prepared a report, and then testified about her evaluation and recommendations in a family court proceeding. On appeal, she argued that as to the plaintiff's malpractice claim against her, witness immunity "should preclude a complaint based on defendant's actions in conducting a forensic evaluation and preparing a report." Id. at 434, 751 A.2d at 792-93. Her argument relied primarily on Briscoe v. LaHue, in which the federal Supreme Court held that witness immunity barred a suit against police officers based on their allegedly perjured testimony during the plaintiffs' criminal trials. 460 U.S. at 345-46. We concluded that neither Briscoe nor our own precedents provided a foundation for extending the doctrine of witness immunity to nontestimonial acts outside a judicial proceeding. Politi, 170 Vt. at 434, 751 A.2d at

13

793. That we did not recognize the common-law privilege for a witness's preliminary statements in that specific context and in response to those specific arguments did not preclude us from doing so in Couture and does not prevent us from doing so now. Cf. Killington, Ltd. v. Lash, 153 Vt. 628, 642-43, 572 A.2d 1368, 1377 (1990) ("The common law is an active, not a static, flow of ideas and principles, a living stream, constrained by policy and precedent within this branch, and by the supervening guides of constitution and statute."), overruled on independent grounds by Energy Pol'y Advocs. v. Att'y Gen.'s Off., 2023 VT 43, ¶ 12, __ Vt. __, 308 A.3d 456; Hay v. Med. Ctr. Hosp. of Vt., 145 Vt. 533, 542-43, 496 A.2d 939, 944-45 (1985) ("It is the role of this Court to adapt the common law to the changing needs and conditions of the people of this state.").

¶ 27.    Next, plaintiff argues that Restatement (Second) of Torts § 588 does not support application of an absolute privilege here because comment (e) provides:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

In plaintiff's view, the "good faith" requirement carves out a conditional privilege for preliminary communications. But because § 588 expressly applies to circumstances in which an absolute privilege is afforded, it would make little sense to read comment (e) in the way plaintiff urges. See Couture, 2017 VT 73 ¶ 13 (concluding that Restatement (Second) of Torts § 587 "supports the extension of absolute privilege" to defendant's statements to law enforcement notwithstanding identical language in comments); compare Restatement (Second) of Torts § 587 cmt. e; with id. § 588 cmt. e. We agree with the Supreme Court of Oklahoma, which interpreted comment (e) to mean that "[a]s long as the speaker or writer of the defamatory communication has an actual subjective good faith belief that litigation is seriously contemplated the privilege attaches whether

14

or not he has a good faith belief in the truth of the communication." Kirschstein v. Haynes, 788 P.2d 941, 952 (Okla. 1990) ("It must be remembered that the purpose of the privilege is not to protect those that otherwise would be liable for defamation, but to lessen the chilling effect on those who seek to utilize the judicial process to seek relief. Necessarily then no remedy is provided for some injuries caused by conduct subject to the absolute privilege."), superseded by rule on separate grounds as stated in Dani v. Miller, 2016 OK 35, ¶ 8 n.1, 374 P.3d 779; 50 Am. Jur. 2d Libel & Slander § 282 (2d ed. 2024) (same); see also, e.g., Provencher v. Buzzell-Plourde Assocs., 711 A.2d 251, 256 (N.H. 1998) ("[P]ertinent pre-litigation communications between a witness and a litigant or attorney are absolutely privileged from civil liability if litigation was contemplated in good faith and under serious consideration by the witness, counsel, or possible party to the proceeding at the time of the communication."). Plaintiff does not assert in his complaint or now argue that either defendant or the police were not seriously considering litigation at the time defendant made her statements. As a result, comment (e) has no impact on our analysis.

¶ 28. Finally, we are not persuaded by plaintiff's public-policy argument for application of a qualified privilege. He contends that the interest in encouraging citizens to report suspected crimes and seek the protection of the criminal-justice system would not be served by recognizing an absolute privilege here because, for purposes of this analysis, we must assume that defendant maliciously made a false report.[4] These arguments fundamentally misunderstand the nature of the relevant policy analysis. The absolute privilege "belongs to the public, not to the individual." Logan's Super Mkts., Inc. v. McCalla, 343 S.W.2d 892, 894 (Tenn. 1961); see Veeder, supra, at 467 (observing that while absolute privilege is "founded on public policy, it is too often viewed

_____

[4] Plaintiff also presents a variety of hypothetical factual scenarios involving maliciously false police reports and argues, without citation or further explication, that application of the privilege to these circumstances would create uncertainty and lead to absurd results. The basis for this contention is entirely unclear, and we decline to address it further in light of this inadequate briefing. See In re DJK, LLC WW & WS Permit, 2024 VT 34, ¶ 38 n.5, __ Vt. __, 323 A.3d 911 (declining to reach "speculative and inadequately briefed" argument).

exclusively from the standpoint of the individual"). Courts have recognized that in some cases, the absolute judicial proceedings privilege may operate to shield speech that society does not value—but "[t]he resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." W. Keeton et al., Prosser & Keeton on Torts § 114, at 816-17 (5th ed. 1984) (footnote omitted).

¶ 29.    In the alternative, plaintiff argues that even if the absolute privilege barred his defamation claim, the trial court erred in concluding that it had the same preclusive effect on his IIED claim. This is so, he asserts, because "lack of privilege in the publication" is an element of the defamation claim, but is not an element of the IIED claim. See Colby v. Umbrella, Inc., 2008 VT 20, ¶ 10, 184 Vt. 1, 955 A.2d 1082 (listing elements of IIED); Lent v. Huntoon, 143 Vt. 539, 546-47, 470 A.2d 1162, 1168 (1983) (listing elements of defamation). However, in Skaskiw v. Vermont Agency of Agriculture, we explained that while we have at times described the absence of privilege as an element of the tort of defamation, "it should, for pleading rules, be seen as an affirmative defense with the burden of proof on defendant," though a defendant may move to dismiss "where the plaintiff's allegations in the complaint show the presence of the privilege." 2014 VT 133, ¶ 12, 198 Vt. 187, 112 A.3d 1277. That we have not described lack of privilege as an essential element of IIED, then, has no bearing on whether defendant may invoke it as an affirmative defense to that claim.

¶ 30.    As Delaware's highest court has explained, "[t]he absolute privilege would be meaningless if a simple recasting of the cause of action from 'defamation' to 'intentional infliction of emotional distress' . . . could void its effect." Barker v. Huang, 610 A.2d 1341, 1349 (Del. 1992) ("However denominated, Barker's claim is that Huang intentionally made derogatorily false statements about her, and that she has been harmed thereby. To the extent that such statements were made in the course of judicial proceedings, they are privileged, regardless of the tort theory

by which the plaintiff seeks to impose liability."); see, e.g., Fridovich, 598 So.2d at 70 ("[T]he successful invocation of a defamation privilege will preclude a cause of action for intentional infliction of emotional distress if the sole basis for the latter cause of action is the defamatory publication."); Goodman v. Goodman, 226 N.E.3d 704, 712 (Ill. App. Ct. 2023) (explaining that absolute litigation privilege barred IIED claim arising from husband's surveillance of wife "in the course of, and in furtherance of, anticipated and pending divorce proceedings"), appeal denied by 221 N.E.3d 386 (Ill.) (unpub. table decision). We agree. Plaintiff's defamation and IIED claims arose from identical factual allegations. To conclude that he could circumvent the privilege by pleading the same facts under a different theory would undermine completely the vital public-policy considerations at stake. See Rioux, 927 A.2d at 309 ("[W]hether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests.").

¶ 31.   Finally, plaintiff argues that application of an absolute privilege to defendant's statements deprives him of his right to a remedy at law secured by Chapter 1, Article 4 of the Vermont Constitution, which provides that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character." Vt. Const. ch. I, art. 4. But "Article 4 guarantees a right to judicial process analogous to the federal Due Process Clause, not a right to specific remedies." Carpin v. Vt. Yankee Nuclear Power Corp., 2024 VT 27, ¶ 16 n.4, __ Vt. __, 319 A.3d 715. " 'Due process is flexible and calls for such procedural protections as the particular situation demands.' " Bandler v. Cohen Rosenthal & Kramer, LLP, 2015 VT 115, ¶ 13, 200 Vt. 333, 131 A.3d 733 (quoting Mathews v. Eldridge, 424 U.S. 319, 321 (1976)). Article 4 thus ensures "adequate," Holton v. Dep't of Emp. & Training, 2005 VT 42, ¶ 27, 178 Vt. 147, 878 A.2d 1051, not "unlimited," Zorn v. Smith, 2011 VT 10, ¶ 16, 189 Vt. 219, 19 A.3d 112, access to judicial process.

¶ 32.   Plaintiff neither refers to the federal due-process analysis we typically use in evaluating Article 4 claims nor argues for the application of a different standard. See A.B. v. S.U.,

2023 VT 32, ¶ 10, __ Vt. __, 298 A.3d 573 (explaining that "we have employed the federal standards to evaluate Article 4 claims" and while parties are free to argue that Vermont Constitution provides greater protection, argument must be adequately supported). Instead, he simply cites Ryan v. Herald Association, Inc. for the proposition that where a common-law privilege and a constitutional right stand in conflict, the privilege must give way to the right. 152 Vt. 275, 566 A.2d 1316 (1989). But Ryan in no way supports this broad assertion. In that case, we rejected a defendant's invocation of the common-law "fair comment" privilege as a defense to defamation, tracing a series of federal Supreme Court decisions involving freedom of the press and concluding that "[w]hatever status the 'fair comment' privilege may once have enjoyed in Vermont, it has for many years been superseded by the constitutional law in this area." Id. at 278-79, 284. Because plaintiff fails to provide the substantive analysis that must accompany an argument under Article 4, his challenge is inadequately briefed and we decline to address it further. Carpin, 2024 VT 27, ¶ 17 n.4 (declining to review Article 4 argument "because plaintiff failed to adequately brief it beyond a passing reference to Article 4's text, offering no authority to demonstrate how this provision applies to her circumstance"); Pease v. Windsor Dev. Rev. Bd., 2011 VT 103, ¶ 29 n.4, 190 Vt. 639, 35 A.3d 1019 (mem.) (declining to address argument that finding of litigation immunity violated plaintiff's rights under Article 4 in the absence of "substantive analysis or briefing").

¶ 33. Though "[t]he standard for granting a motion for judgment on the pleadings is an exacting one," Huntington Ingalls Indus., 2022 VT 45, ¶ 17, the trial court did not err in concluding that it was satisfied here. Because both of plaintiff's claims were predicated solely on statements subject to this absolute immunity, his " 'pleadings contain[ed] no allegations that if proven would permit recovery.' " Id. (quoting Hinsdale v. Sherman, 171 Vt. 605, 606, 764 A.2d 1218, 1219 (2000) (mem.)). As a result, defendant's motion for judgment under Rule 12(c) was appropriately granted.

## B. Anti-SLAPP Statute

¶ 34. Finally, we consider whether the trial court erred in granting defendant's special motion to strike under the anti-SLAPP statute, 12 V.S.A. § 1041, and, therefore, in awarding defendant attorney's fees. See Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 28, 200 Vt. 465, 133 A.3d 836 (explaining that special motion to strike is not moot where dismissal granted on independent grounds because defendant is "still . . . entitled to relief in the form of attorney's fees if successful in dismissing plaintiff's suit under the [anti-SLAPP] statute").

¶ 35. We review the trial court's application of § 1041 without deference. Id. ¶ 36. "Our goal in interpreting a statute is to effectuate the intent of the Legislature." Id. To that end, if the statutory language is facially unambiguous, "we enforce it according to its terms." Id. (quotation omitted); Billewicz v. Town of Fair Haven, 2021 VT 20, ¶ 14, 214 Vt. 511, 254 A.3d 194. "Only where the language creates uncertainty will we resort to canons of statutory construction to ascertain the underlying legislative intent." Billewicz, 2021 VT 20, ¶ 14. Because the anti-SLAPP statute "attempt[s] to define the proper intersection between two constitutional rights—a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts," we have held that it must be "construed as limited in scope and that great caution should be exercised in its interpretation." Felis, 2015 VT 129, ¶ 41.

¶ 36. Plaintiff first argues that it was plain error to grant defendant's special motion to strike because his complaint fell within an exclusion to the anti-SLAPP statute carved out by 12 V.S.A. § 1041(h)(1). The plain-error doctrine allows for "very limited" review of an argument that—like this one—was not otherwise preserved for appeal. State v. Fonseca-Cintron, 2019 VT 80, ¶ 17, 213 Vt. 11, 238 A.3d 594 (quotation omitted). However, "[p]lain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." State v. Oscarson, 2004 VT 4, ¶ 27, 176 Vt. 176, 845 A.2d 337

(quotation omitted). We will consider a plain-error argument in a civil case "only in limited circumstances, i.e., when an appellant raises a claim of depravation of fundamental rights, or when a liberty interest is at stake in a quasi-criminal or hybrid civil-criminal probation hearing." Follo v. Florindo, 2009 VT 11, ¶ 16, 185 Vt. 390, 970 A.2d 1230 (citation omitted). Although plaintiff fails to offer any specific argument in support of plain-error review here, we recognize that he otherwise alleges that application of the anti-SLAPP statute deprived him of a fundamental right of access to the courts. See id. But even assuming the analysis is appropriately applied, plaintiff's argument fails because we see no error at all—let alone plain error.

¶ 37. Contrary to plaintiff's assertion, § 1041(h)(1) does not preclude application of the anti-SLAPP statute to "statements in 'any enforcement action or criminal proceeding brought by the State of Vermont or any political subdivision thereof.' " Rather, § 1041(h) provides that the statute "shall not apply to: (1) any enforcement action or criminal proceeding brought by the State of Vermont or any political subdivision thereof; or (2) a case involving tortious interference with legally protected health care as provided in section 7302 of this title." This unambiguous language limits the type of actions in which a defendant may file a special motion to strike—not the context in which the alleged conduct giving rise to that action arose. Plaintiff's complaint is not an "enforcement action or criminal proceeding brought by the State of Vermont or any political subdivision thereof," and, as a result, § 1041(h)(1) has no bearing here.

¶ 38. Next, plaintiff contends that the court erred in denying his request for an evidentiary hearing. The statute requires that the court "hold a hearing on a special motion to strike," but makes no express provision for the conduct of that hearing. 12 V.S.A. § 1041(d). However, it does require that the court, in making its determination on the motion, "consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Id. § 1041(e)(2). While plaintiff allows that the statute does not specify that the hearing called for under § 1041(d) be an evidentiary one, he argues that the requirement would be "meaningless" in

the absence of an opportunity to take evidence, and the denial of his request therefore "violated the spirit of the statutory hearing requirement."

¶ 39. We are not persuaded. If the Legislature intended the hearing mandated by § 1041(d) to be evidentiary in nature, it could have easily so specified—just as it has in a variety of other statutes. See, e.g., 3 V.S.A. § 461a(a) ("An applicant for disability retirement benefits under section 460 or 461 of this title may file a request for an <u>evidentiary hearing</u> with the Retirement Board if the application for benefits is denied." (emphasis added)); 13 V.S.A. § 7556(d) ("A person held without bail under section 7553a of this title prior to trial shall be entitled to an independent, second <u>evidentiary hearing</u> on the merits of the denial of bail." (emphasis added)); 26 V.S.A. § 1372(b)(1) ("The Executive Director . . . shall set a time for the <u>evidentiary hearing</u> as soon as convenient following the determination by the investigative committee that an evidentiary hearing is warranted." (emphasis added)); 33 V.S.A. § 5291(d) ("A child placed in a secure facility on an order pursuant to subsection (a), (b), or (c) of this section with a finding that no other suitable placement is available and the child presents a risk of harm to others or to property shall be entitled to an independent, second <u>evidentiary hearing</u>." (emphasis added)). Where, as here, "the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such action without legislative authority." <u>Town of Milton Bd. of Health v. Brisson</u>, 2016 VT 56, ¶ 24, 202 Vt. 121, 147 A.3d 990 (quotation omitted).

¶ 40. Moreover, "[i]t is inappropriate to read into a statute something which is not there unless it is necessary in order to make the statute effective." <u>Doncaster v. Hane</u>, 2020 VT 22, ¶ 20, 212 Vt. 37, 299 A.3d 1026 (quotation omitted). It is not clear why an evidentiary hearing would be necessary to effectuate the anti-SLAPP statute where it specifically contemplates resolution of a special motion to strike based on the pleadings and affidavits. See 12 V.S.A. § 1041(e)(2). As the Massachusetts Supreme Judicial Court has observed in interpreting its own anti-SLAPP

statute—which served as a model for the Vermont statute—the legislation's underlying purposes are "broadly protecting petition activity and promoting resolution of 'SLAPP' litigation quickly with minimal cost." Polay v. McMahon, 10 N.E.3d 1122, 1131 (Mass. 2014) (quotation omitted); see also Cornelius v. The Chronicle, Inc., 2019 VT 4, ¶ 22, 209 Vt. 405, 206 A.3d 710 (quoting Polay). Consistent with these goals, it imposes tight timelines on each step in the resolution of a motion to strike and provides for an award of attorney's fees if the motion is granted. See 12 V.S.A. § 1041(b), (c), (d), (f)(1). Reading an evidentiary-hearing requirement into the statute would counteract this statutory purpose. Given the "great caution" that must be exercised in construing the anti-SLAPP statute, we decline plaintiff's invitation to do so. Felis, 2015 VT 129, ¶ 41.

¶ 41. Next, we consider plaintiff's challenges to the court's substantive analysis of defendant's special motion to strike. As noted above, the anti-SLAPP statute calls for courts to engage in a two-step analysis. Cornelius, 2019 VT 4, ¶ 8. A defendant may file a special motion to strike a complaint in "an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). "If the defendant satisfies the threshold requirement, the court must grant the motion 'unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff.' " Cornelius, 2019 VT 4, ¶ 8 (quoting 12 V.S.A. § 1041(e)).

¶ 42. Plaintiff argues that the trial court erred in the first step of its analysis when it concluded that defendant's October 2019 statements to police constituted an "exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). Such exercise includes, among other definitions, "any written or oral statement made before a

22

legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," id. § 1041(i)(1), and "any other statement or conduct concerning a public issue or an issue of public interest that furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances," id. § 1041(i)(4). Plaintiff argues that defendant's statements to police do not constitute a "statement before a judicial proceeding" because there was no proceeding pending when they were made. But in focusing on § 1041(i)(1), he neglects to address § 1041(i)(4).

¶ 43.    Courts have explained that reporting alleged criminal conduct to law enforcement officials is an exercise of the First Amendment right to petition the government for redress of grievances. See Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla., 482 F.3d 1232, 1243 n.5 (10th Cir. 2007) (concluding that plaintiff's attempt to report that she had allegedly been physically assaulted to law enforcement was an exercise of her First Amendment right to petition government for redress of grievances); Jackson v. New York State, 381 F. Supp. 2d 80, 89 (N.D.N.Y. 2005) (explaining that "[i]t is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances" (quotation omitted)). We agree with this characterization and conclude that defendant's conduct fell within § 1041(i)(4). And while plaintiff contends that defendant's statements were not made "in connection with a public issue" because they concerned his alleged conduct in the context of a private relationship, his citations to cases from other jurisdictions are not persuasive given this Court's recognition "that matters connected to law enforcement investigation, public safety, and crime in the community are of public concern." Cornelius, 2019 VT 4, ¶ 10 (recognizing that public has a First Amendment " 'right of access to information . . . concerning crime in the community' " (quoting Caledonian Record Publ'g Co. v. Walton, 154 Vt. 15, 21, 573 A.2d 296, 299 (1990))).

23

¶ 44. Plaintiff also argues that § 1041(a) does not apply because in his view, his complaint is not appropriately characterized as a "strategic lawsuit against public participation" of the kind the statute was intended to prevent. "Under § 1041(a), a SLAPP suit is 'an action arising from defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution.' " Felis, 2015 VT 129, ¶ 32 (quoting 12 V.S.A. § 1041(a)). The statute unambiguously directs the court to apply this definition. It does not call for the court to consider—as plaintiff invites us to do—whether his suit was filed to "intimidate and silence" defendant. Under the principles of statutory construction set forth above, we must enforce the plain language of the statute as written. See Billewicz, 2021 VT 20, ¶ 14. In the absence of an ambiguity, we will not speculate about whether its application in this specific circumstance furthers the Legislature's intent.

¶ 45. The final argument plaintiff aims at the court's first-step analysis is also unavailing. He contends that his complaint did not "aris[e] from the defendant's exercise" of free-speech rights protected under the state and federal constitutions as required under § 1041(a) because he alleged that defendant's statements were false and defamatory, and malicious defamation is not constitutionally protected. As discussed in greater detail below, the anti-SLAPP statute clearly contemplates a similar analysis—but it places the burden on plaintiff, at the second stage, to show that defendant's "exercise of . . . her right to freedom of speech and to petition was devoid of any reasonable factual support." 12 V.S.A. § 1041(e)(1)(A). This inquiry would be unnecessary if the court were obligated to evaluate the truthfulness of the defendant's statements at the first stage of review, and we presume that the Legislature "inserted the statutory language advisedly, and with intent that it should be given meaning and force," and will not construe it "in a way that renders a significant part of it pure surplusage." State of Vt. Agency of Nat Res. v. Parkway Cleaners, 2019 VT 21, ¶ 24, 209 Vt. 620, 210 A.3d 445 (alteration omitted) (quotations omitted).

24

¶ 46. Turning to that second step, then, we take up plaintiff's argument that the civil division erred in concluding that he did not show that defendant's "exercise of . . . her right to freedom of speech and to petition was devoid of any reasonable factual support." 12 V.S.A. § 1041(e)(1)(A). The court reasoned that the underlying criminal case involved numerous procedural steps in which police, prosecutors, and judges reviewed the evidence and determined that there was sufficient factual and legal support for further proceedings. Plaintiff does not meaningfully confront this reasoning. Instead, he simply cites the standard for review on a motion for judgment on the pleadings in support of the proposition that the court was required to take the allegations in his complaint as true. But this issue does not arise in connection with defendant's motion for judgment on the pleadings—it arises in connection with her special motion to strike under the anti-SLAPP statute. That statute requires that the court grant the motion unless plaintiff shows that defendant's exercise of the constitutional right "was devoid of any reasonable factual support." 12 V.S.A. § 1041(e)(1)(A). Plaintiff's argument is without merit because it is predicated on an incorrect standard.

¶ 47. Finally, plaintiff contends that if the anti-SLAPP statute applies to his suit—as we conclude that it does—it unconstitutionally deprives him of his right to a remedy under Article 4 and to a jury trial under Article 12, and the compulsory fee award impermissibly burdens his attempt to exercise his rights to free speech and petition the court. See Vt. Const. ch. I, arts. 4, 12. In contrast to plaintiff's constitutional challenge to the application of an absolute privilege, these arguments are adequately briefed. However, the trial court failed to meaningfully engage with them when plaintiff raised them below, instead broadly rejecting his arguments as inapplicable and observing that the anti-SLAPP statute already represented a legislative balancing of the conflicting constitutional rights at issue. That the Legislature concluded that 12 V.S.A. § 1041 appropriately balances competing rights does not answer plaintiff's argument that several aspects of the statute are nonetheless unconstitutional. We decline to address these contentions for the

25

first time on appeal, and therefore remand to the trial court for the purpose of considering plaintiff's constitutional challenges to the anti-SLAPP statute.

The trial court's entry of judgment on the pleadings is affirmed. Its ruling on defendant's special motion to strike is affirmed in part but remanded for evaluation of plaintiff's constitutional challenges to the anti-SLAPP statute.

FOR THE COURT:

_____
Associate Justice