NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 9

No. 24-AP-164

| | |
|---|---|
| Kristina J. Polak & Stephen M. Polak | Supreme Court |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Civil Division |
| Felipe Ramirez-Diaz & Yesica Sanchez | January Term, 2025 |

Samuel Hoar, Jr., J.

Robert J. Kaplan of Kaplan and Kaplan, Burlington, for Plaintiffs-Appellants.

Matthew M. Shagam, Vermont Legal Aid, Inc., Springfield, for Defendants-Appellees.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **EATON, J.** Plaintiffs appeal the trial court's order granting defendants' special motion to strike plaintiffs' claims of defamation, malicious prosecution, and intentional infliction of emotional distress (IIED) pursuant to Vermont's anti-SLAPP law, 12 V.S.A. § 1041. Plaintiffs also challenge a discovery sanction imposed by the trial court for plaintiffs' failure to respond to defendants' interrogatories and requests for production related to their remaining defamation claim, arguing that it amounted to dismissal without the requisite findings. We conclude that the court erred in granting the special motion to strike because the speech underlying the affected claims—defendants' allegedly false statements to police and the court accusing plaintiffs of criminal activity—was not made in connection with a public issue. We therefore reverse the order granting the motion to strike and remand for further proceedings on the claims that were stricken.

However, we hold that the court acted within its discretion in imposing the discovery sanction and therefore affirm that order and the subsequent order awarding summary judgment to defendants on the related defamation claim.

## I. Factual and Procedural History

¶ 2.     Plaintiffs, Kristina and Stephen Polak, and defendants, Felipe Ramirez-Diaz and Yesica Sanchez de Ramirez, are neighbors in St. Albans.  In 2021, plaintiffs filed a complaint against defendants alleging two counts of defamation, one count of malicious prosecution, and one count of IIED.

¶ 3.     According to plaintiffs, after plaintiffs complained to municipal authorities that defendants were burning plastic in their yard, defendants "began a campaign of psychological warfare against plaintiffs."  Plaintiffs alleged that in May 2018, Yesica Sanchez de Ramirez falsely reported to police that Stephen Polak had physically assaulted her and thrown her to the ground while she was holding her infant.  Plaintiffs further alleged that in June 2018, defendants falsely reported to police that Kristina Polak had pointed a gun at them and made a death threat.

¶ 4.     Defendants filed anti-stalking complaints against plaintiffs based on these allegations.  The State also filed a petition for an Extreme Risk Protection Order (ERPO) against Kristina Polak.  The criminal division entered a temporary order prohibiting Polak from possessing dangerous weapons and the police seized her firearms.  After a hearing in July 2018, at which defendants testified, the court denied the ERPO petition.  The court found that there was insufficient credible evidence that Polak had pointed a gun at defendants and defendants' actions after the incident indicated that they were not placed in reasonable fear of physical harm.  The civil division also declined to issue a final order against plaintiffs in either of the anti-stalking cases, concluding that the criteria for an anti-stalking order were not met.

¶ 5.     Plaintiffs alleged that defendants repeated their false claims that plaintiffs assaulted and threatened them to neighbors and community members, and told people that plaintiffs were

2

racists and had discriminated against them based on their Mexican national origin and immigration status.

¶ 6.     Defendants filed a special motion to strike plaintiffs' complaint pursuant to Vermont's anti-SLAPP statute, 12 V.S.A. § 1041.  Defendants argued that their complaints to police and the court were protected petitioning activity in connection with public issues, namely, public safety, possible criminal activity, and encouraging victims of harassment to report their abuse.[1]  Plaintiffs opposed the motion, arguing that defendants' statements were not made in connection with a public issue because plaintiffs were not public figures and the statements concerned a private dispute that did not affect a large number of people and was not a matter of widespread public interest.  They further argued that the statements were devoid of reasonable factual support or basis in law, pointing to the fact that the anti-stalking and ERPO petitions were ultimately denied.

¶ 7.     The trial court determined that defendants' reports to police were protected because they were petitioning the government for redress.  Likewise, their statements to the court were protected because they were submitted as part of a judicial proceeding.  The court concluded that defendants' alleged statements to neighbors and community members about the May and June 2018 incidents were also protected because they concerned public safety and possible crime in the community, which were matters of public interest.  It alternatively reasoned that even if the statements to neighbors and community members did not involve a matter of public interest, they were merely incidental to the allegations regarding protected activity.  The court held that plaintiffs failed to demonstrate that defendants' reports to law enforcement and anti-stalking complaints

---

[1] In their motion to strike and in their appellate brief, defendants refer extensively to a discrimination complaint they made to the Vermont Human Rights Commission (HRC) and a resulting HRC investigation into plaintiffs' conduct.  Plaintiffs' claims are not premised on defendants' complaint to the HRC or their statements or activities in that proceeding.  We therefore limit our review to the allegations contained within plaintiffs' complaint.

were devoid of any reasonable factual support because there was some evidence supporting defendants' statements, even if the courts ultimately concluded that the evidence did not meet the legal standards for issuing an ERPO or an anti-stalking order. The court accordingly struck three of the four counts in plaintiffs' complaint—the claims of malicious prosecution, IIED, and defamation against Sanchez de Ramirez—concluding that these were based on conduct protected by the anti-SLAPP statute. The court partially struck the remaining count of defamation against both defendants to the extent that it was based on the same speech and activity as the other three counts. However, it declined to strike that count in its entirety, concluding that defendants' alleged statements to neighbors and community members that plaintiffs were racists and discriminated against defendants were not protected speech activity.

¶ 8.    Plaintiffs moved for reconsideration and to amend their complaint. The trial court denied both motions. Plaintiffs then sought permission to take an interlocutory appeal, which the trial court also denied.

¶ 9.    Defendants subsequently moved for summary judgment on the remaining defamation claim. The court granted the motion, noting that in their response to defendants' statement of undisputed facts, plaintiffs had failed to reproduce defendants' questions or provide specific citations to parts of the record that demonstrated a genuine dispute as to any fact. It further reasoned that plaintiffs did not identify any specific defamatory statements or produce evidence of pecuniary loss, attorney's fees specifically attributable to the remaining claim, or other actual harm, as required to support a defamation claim. The court therefore entered summary judgment in favor of defendants. This appeal followed.

## II. Analysis

¶ 10.    On appeal, plaintiffs argue that the court erred in granting defendants' special motion to strike their defamation, malicious prosecution, and IIED claims because these claims do not involve defendants' exercise of their right to free speech or to petition the government in

4

connection with a public issue.  They further argue that defendants' statements were devoid of

reasonable factual support and caused plaintiffs actual harm.  Finally, they claim the court abused

its discretion by imposing a discovery sanction that effectively prevented them from prosecuting

their remaining defamation claim.  As discussed below, we conclude that defendants' statements

were not protected by the anti-SLAPP statute and therefore reverse the order granting the motion

to strike.  However, we affirm the trial court's imposition of the discovery sanction and its award

of summary judgment on the remaining defamation claim.

### A.  Timeliness of Appeal

¶ 11.    Before we reach plaintiffs' arguments, we must address defendants' claim that

plaintiffs did not timely appeal the trial court's decision on the anti-SLAPP motion.  Defendants

rely on 12 V.S.A. § 1041(g), which states: "An order granting or denying a special motion to strike

shall be appealable in the same manner as an interlocutory order under Rule 5 of the Vermont

Rules of Appellate Procedure."  Vermont Rule of Appellate Procedure 5, in turn, requires a motion

for permission to take an interlocutory appeal to be filed within fourteen days of the order appealed

from.  V.R.A.P. 5(b)(5)(a).  Defendants argue that, construed together, these provisions required

plaintiffs to seek permission from this Court to take an interlocutory appeal from the trial court's

August 2021 order partially striking their complaint to preserve any challenge to that order.  They

argue that because defendants did not seek an immediate appeal from the August 2021 order,

defendants' challenge to the anti-SLAPP decision is untimely.[2]

¶ 12.    "Our goal in interpreting a statute is to effectuate the intent of the Legislature."

Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 36, 200 Vt. 465, 133 A.3d 836.  If the

statutory language is unambiguous, we enforce it "according to its terms."  In re Hinsdale Farm,

---

[2] As noted above, plaintiffs unsuccessfully sought permission from the trial court to take an interlocutory appeal of the August 2021 order.  They did not file a motion for permission in this Court.  See V.R.A.P. 5(b)(7).

5

2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249.  However, if the language is ambiguous, "we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law." Id.

¶ 13.   Interlocutory orders are typically not subject to immediate appeal because they are not final.  See In re Burlington Bagel Bakery, Inc., 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) ("To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving nothing for the court to do but execute the judgment." (quotation omitted)).  The Vermont Rules of Appellate Procedure allow this Court to conduct interlocutory review in two circumstances.  Rule 5 permits an immediate appeal from an interlocutory order in a civil case if "the order or ruling involves a controlling question of law about which there exists substantial ground for difference of opinion; and . . . an immediate appeal may materially advance the termination of the litigation."  V.R.A.P. 5(b)(1).  Rule 5.1, titled "Collateral Final Order Appeals," permits interlocutory review when the challenged order "conclusively determines a disputed question; . . . resolves an important issue completely separate from the merits of the action; and . . . will be effectively unreviewable on appeal from a final judgment."  V.R.A.P. 5.1(a)(1).

¶ 14.   The provision cited by defendants appears to simply restate what is already true in Vermont state courts under our rules: an interlocutory order resolving a motion to strike may be immediately appealable if it meets the criteria set forth in Rule 5.  12 V.S.A. § 1041(g).  In the federal courts, however, there is disagreement about whether an order resolving an anti-SLAPP motion is immediately appealable for purposes of federal appellate jurisdiction if it does not dispose of the entire case.  Compare Ernst v. Carrigan, 814 F.3d 116, 119, 122 (2d Cir. 2016) (explaining that federal appellate jurisdiction is limited to final decisions, which includes those that terminate an action and collateral final orders, and concluding that "orders passing on the merits of an anti-SLAPP motion do not fall within the collateral order doctrine"), with Henry v.

6

Lake Charles Am. Press, L.L.C., 566 F.3d 164, 181 (5th Cir. 2009) (concluding that order denying anti-SLAPP motion is immediately reviewable collateral final order), and Batzel v. Smith, 333 F.3d 1018, 1026 (9th Cir. 2003) (holding same), superseded by statute as stated in Breazeale v. Victim Services, Inc., 878 F.3d 759, 766-67 (9th Cir. 2017). Viewed in this context, the meaning of § 1041(g) becomes clear: the provision clarifies that, for purposes of Vermont law, an order granting or denying an anti-SLAPP motion is not a collateral final order. Instead, it is an interlocutory order that must satisfy the Rule 5 criteria to be immediately appealed.

¶ 15. However, § 1041(g) does not state that an order resolving a motion to strike is only appealable under Rule 5, and we decline to read such a requirement into the statute. See Ketchum v. Town of Dorset, 2011 VT 49, ¶ 10, 190 Vt. 507, 22 A.3d 500 (mem.) (explaining that this Court presumes Legislature intended plain, ordinary meaning of language used and "will not read language into a statute unless necessary" (quotation omitted)). In general, an appeal from a final judgment confers this Court with "jurisdiction over the issues encompassed in the record leading up to final judgment." State v. Kuhlmann, 2022 VT 28, ¶ 16, 217 Vt. 78, 282 A.3d 425; see V.R.A.P. 3(a) ("An appeal from a judgment preserves for review any claim of error in the record . . . ."); see also Hyan v. Hummer, 825 F.3d 1043, 1047 (9th Cir. 2016) (holding that grant of anti-SLAPP motion is "fully reviewable on appeal from final judgment" because "[t]he erroneous grant of an anti-SLAPP motion to strike can be fully remedied on appeal by remanding the case for proceedings on the wrongly-struck claim or claims"). Absent an express indication of a contrary intent from the Legislature, we conclude that a timely appeal from a final judgment preserves a challenge to an interlocutory order resolving an anti-SLAPP motion. We therefore have jurisdiction to consider plaintiffs' claims of error in the trial court's August 2021 order.

B. Whether Defendants' Statements Were Made in Connection with a Public Issue

¶ 16. We accordingly turn to plaintiffs' argument that defendants' conduct was not protected by the anti-SLAPP statute. We review a decision granting or denying a motion to strike

a complaint under § 1041 de novo. <u>Cornelius v. The Chron., Inc.</u>, 2019 VT 4, ¶ 8, 209 Vt. 405, 206 A.3d 710. Plaintiffs first argue that defendants' statements about the alleged assault and gun-threatening incident were not made in connection with a public issue. According to plaintiffs, the fact that the statements involved possible criminal activity did not convert an essentially private dispute between neighbors into a matter of public interest. We conclude that plaintiffs are correct and that the trial court should have denied the motion to strike.

¶ 17. Section 1041(a) provides that a defendant may file a special motion to strike a complaint in "an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." The statute defines such an exercise to include:

> (1) any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement concerning an issue of public interest made in a public forum or a place open to the public; or
>
> (4) any other statement or conduct concerning a public issue or an issue of public interest that furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances.

12 V.S.A. § 1041(i). If the court finds that the action arises from protected speech or petitioning activity, the court must grant the motion "unless the plaintiff shows that: (A) the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law; and (B) the defendant's acts caused actual injury to the plaintiff." <u>Id</u>. § 1041(e).

¶ 18. In <u>Felis v. Downs Rachlin Martin PLLC</u>, we explained that the anti-SLAPP statute represents an "attempt[] to define the proper intersection between two constitutional rights—a

defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts." 2015 VT 129, ¶ 41. Given the competing interests at stake, we emphasized that § 1041 "should be construed as limited in scope and that great caution should be exercised in its interpretation." Id. Accordingly, we held "that the 'in connection with a public issue' requirement of 12 V.S.A. § 1041(a) must be met in any motion to strike under the anti-SLAPP statute, regardless of the type of activity." Id. ¶ 52. Applying this principle to the facts before us in Felis, we concluded that the defendant's testimony about the value of one of the plaintiff's businesses in a divorce proceeding was not protected by the statute because although the statements were made in a judicial proceeding, they did not concern "a matter of public significance." Id. ¶ 53 (quotation omitted).

¶ 19. We have since construed the "in connection with a public issue" requirement in several published cases involving statements about criminal activity. The first was Cornelius v. The Chronicle, Inc., which involved a complaint for invasion of privacy against a newspaper that published two articles about the plaintiff. 2019 VT 4, ¶ 1. One article reported that the plaintiff and his brother had threatened a parole officer and had been deemed a possible threat by law enforcement due to their lengthy criminal history and increasingly violent and erratic behavior. It also described the brothers' involvement in the killing of a third individual. The second article described the plaintiff's arraignment on charges of aiding in the escape of his brother.

¶ 20. This Court affirmed the trial court's order granting the defendant newspaper's motion to strike the complaint. Id. ¶ 17. We explained that "the articles in this case were exercises of free speech and connected to a public issue because they concerned public safety, law enforcement activity, possible criminal behavior, and the reporting of arrests." Id. ¶ 10. We held that "the public had an interest in law enforcement's action of characterizing [the] plaintiff and his brother's actions as threatening and in the information that led to that characterization," given the connection to public safety and the plaintiff's statements on social media that he was looking for

9

the parole officer. Id. ¶ 13. The public also had an interest in the plaintiff's statements on public Facebook accounts about police, "particularly given that the brothers had previously placed themselves in the public light by providing interviews to the media about the killing of Isaac Hunt." Id. We concluded that the news article containing this information was therefore protected by the anti-SLAPP statute. Id. The plaintiff did not challenge the fact that the second article, which described the plaintiff's arraignment, was connected to a public issue. We reiterated, however, that "the public has an interest in criminal charges and criminal proceedings and the article detailing plaintiff's arraignment was exactly this type of proceeding." Id. ¶ 16.

¶ 21. Similarly, in Wolfe v. VT Digger, we held that four newspaper articles challenged by the plaintiff involved speech in connection with a public issue because they described plaintiff's threats toward the Speaker of the Vermont House of Representatives, his arrest at the Statehouse, and his resulting criminal charges. 2023 VT 50, ¶ 22, __ Vt. __, 310 A.3d 920. We explained that "[t]he public had an interest in information relating to plaintiff's alleged threats toward a high-ranking public official and plaintiff's resulting arrest and criminal charges," as well as subsequent charges for violating his conditions of release by continuing to contact the Speaker. Id. We therefore held that the newspaper was entitled to have the plaintiff's defamation complaint stricken under § 1041. Id. ¶ 25.

¶ 22. Both Cornelius and Wolfe involved motions to strike claims that arose from news reports about individuals who had been arrested and charged with relatively high-profile crimes. More recently, however, we considered a motion to strike a defamation complaint that was based on statements made by a complaining witness to the police. In Talandar v. Manchester-Murphy, the plaintiff alleged that the defendant maliciously made a false report of sexual and physical assault to police that resulted in the plaintiff being arrested and held without bail for nearly two years before he was acquitted by a jury. 2024 VT 86, __ Vt. __, __ A.3d __. The defendant moved to strike the complaint under § 1041 and moved for judgment on the pleadings on the ground that

10

her report to law enforcement was absolutely privileged. The trial court granted both motions. On appeal, this Court concluded that the defendant's statements were protected by absolute privilege and that the trial court properly granted her motion for judgment on the pleadings. Id. ¶ 33. We also affirmed the decision granting the motion to strike. Id. ¶ 47. In so doing, we rejected the plaintiff's claim that the defendant's report to police that the plaintiff assaulted her did not concern a public issue, stating simply that "[defendant's] citations to cases from other jurisdictions are not persuasive given this Court's recognition 'that matters connected to law enforcement investigation, public safety, and crime in the community are of public concern.' " Id. ¶ 43 (quoting Cornelius, 2019 VT 4, ¶ 10).[3]

¶ 23. Taken together, these decisions could be interpreted to mean that statements reporting criminal activity always concern a public issue and are therefore protected by the anti-SLAPP statute. This was the view taken by the trial court, which concluded that all of defendants' statements about the alleged assault and threatening with a gun were protected, regardless of to whom they were made, because they related to possible criminal activity.

¶ 24. We conclude that such an approach is overbroad and inconsistent with our admonition in Felis that § 1041 must be "construed as limited in scope and that great caution should be exercised in its interpretation" to avoid impinging on litigants' right of access to the courts. Felis, 2015 VT 129, ¶ 41. We recognize that in Cornelius, we stated broadly "that matters connected to law enforcement investigation, public safety, and crime in the community are of public concern." 2019 VT 4, ¶ 10. However, that comment must be viewed within the context of

---

[3] In Talandar, the plaintiff briefly argued in his opposition to the motion to strike that the plaintiff's statements did not involve a public issue because they were about private conduct and were false. He did not attempt to distinguish Cornelius or Wolfe with regard to the public-issue requirement. While he cited the California test for determining a public issue in his appellate brief, he did not claim before the trial court that it should adopt that standard, as would be required to preserve such an argument. The issue was therefore not squarely presented to this Court on appeal, as it is here.

that opinion, which concerned news reports about an individual who had a relatively high profile within the community due to his prior criminal involvement, had made public threats about and to police, and had been deemed a possible threat to public safety. It was not intended to expand the anti-SLAPP statute beyond its intended purpose of protecting speech made in connection with a public issue. While reports of criminal activity are frequently a matter of public concern, we decline to create a blanket exemption for such statements that ignores their content or to whom they are made.

¶ 25. As one California court has explained:

> The fact that a broad and amorphous public interest can be connected to a specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute. By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called synecdoche theory of public issue in the anti-SLAPP statute, where the part is considered synonymous with the greater whole. In evaluating the first prong of the anti-SLAPP statute, we must focus on the specific nature of the speech rather than the generalities that might be abstracted from it.

World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc., 92 Cal. Rptr. 3d 227, 235 (Ct. App. 2009) (quotations and citations omitted) (holding corporation's claims against former associates and competitor that defendants misappropriated trade secrets did not concern issue of public interest; although employee mobility was issue of public interest when considered in abstract, challenged statements were not designed to inform public of issue of public interest); see also Time, Inc. v. Firestone, 424 U.S. 448, 456 (1976) (rejecting notion that all reports of judicial proceedings concern matters of public interest because "[w]hatever their general validity, use of such subject-matter classifications to determine the extent of constitutional protection afforded defamatory falsehoods may too often result in an improper balance between the competing interests in this area."); Campbell v. Campbell, 234 N.E.3d 254, 255-56 (Ind. Ct. App. 2024) ("While domestic violence is of general public interest, that does not make every allegation of domestic violence a

12

newsworthy event, particularly when, as here, the allegations concern private conduct by private individuals and attract no public interest on their own."). Instead, we conclude that courts must focus on the specific statements in each case, including the circumstances in which they are made, to determine if they are made in connection with a public issue. See Commonwealth Energy Corp. v. Inv. Data Exch., Inc., 1 Cal. Rptr. 3d 390, 395 (Ct. App. 2003) (explaining that determination of whether speech involves public issue for purposes of anti-SLAPP motion requires "examination of the specific nature of the speech rather than the generalities that might be abstracted from it").

¶ 26.　Section 1041 does not define the term "public issue." Because Vermont's statute was based primarily on California's anti-SLAPP statute, we look to how California courts have interpreted the public-issue requirement for guidance in interpreting the term.[4] Felis, 2015 VT 129, ¶¶ 31, 38. Under California law, speech or activity may concern a public issue or be of public interest if "the subject of the statement or activity precipitating the claim was a person or entity in the public eye," "the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants," or "the statement or activity precipitating the claim involved a topic of widespread public interest." Wilbanks v. Wolk, 17 Cal. Rptr. 3d 497, 506 (Ct. App. 2004). Speech that "occurred in the context of an ongoing controversy, dispute or discussion, or affected a community in a manner similar to that of a governmental entity" may also

---

[4] Under California law, a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need not be made in connection with a public issue to be protected by the anti-SLAPP statute. Briggs v. Eden Council for Hope & Opportunity, 969 P.2d 564 (Cal. 1999). In other words, a defendant would only have to show that their statements were made in connection with a public issue if they sought protection under the equivalent of 12 V.S.A. § 1041(i)(3) (statements made in a public forum) or (4) (the so-called "catchall" provision). Under Vermont law, as described in Felis, 2015 VT 129, ¶ 46, the "in connection with a public issue" requirement applies irrespective of the setting in which the statement is made. However, the considerations underlying the test developed by California courts for determining a public issue remain sound regardless of the context in which the speech or activity takes place, and we therefore conclude that it is appropriate to also use that test for statements falling under § 1041(i)(1) and (2), which some of the statements in this case arguably do.

13

qualify. FilmOn.com Inc. v. DoubleVerify Inc., 439 P.3d 1156, 1162 (Cal. 2019) (citation, alterations and quotations omitted).

¶ 27. A leading California case sets forth some further limiting principles derived from First Amendment precedent:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure. A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

Weinberg v. Feisel, 2 Cal. Rptr. 3d 385, 392-93 (Ct. App. 2003) (citations, alteration and quotation omitted).

¶ 28. Applying these principles here, we conclude that defendants' statements regarding the alleged assault and gun threatening incident were not made in a connection with a public issue. First, there is no evidence that plaintiffs, the subjects of the statements, were public figures or were in the public eye: they did not hold "roles of especial prominence in the affairs of society" or "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974).[5] Nor did plaintiffs attract public interest through their alleged criminal activities; neither plaintiff was arrested or charged with a crime and there were no news reports about the parties' dispute.

---

[5] Defendants appear to argue on appeal that plaintiffs put themselves in the public eye by complaining to town and other officials and posting videos on their Facebook pages. However, they did not raise this argument below and so we do not consider it. In re Lorentz, 2003 VT 40, ¶ 5, 175 Vt. 522, 824 A.2d 598 (mem.) ("We will not address arguments made for the first time on appeal.").

14

Defendants' allegations did not affect large numbers of people beyond themselves and plaintiffs. Cf. Briganti v. Chow, 254 Cal. Rptr. 3d 909, 912 (Ct. App. 2019) (holding that defendant's comments on social media describing widespread pattern of identity theft and multilevel-marketing scams by plaintiff implicated public interest because alleged criminality would be of concern to substantial number of people). There is no indication that the statements occurred in the context of an ongoing public controversy or affected the community in a manner similar to a governmental entity. While public safety and crime are matters of public interest in an abstract sense, the specific allegations here were limited to the parties and there was no indication of a broader threat to the public, unlike in Cornelius. Finally, the fact that defendants repeated their allegations to others in the community did not transform them into a matter of public interest where the content of the statements concerned essentially a private dispute between neighbors. See Hutchinson v. Proxmire, 443 U.S. 111, 135 (1979) ("Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."); Jeppson v. Ley, 257 Cal. Rptr. 3d 921, 928 (Ct. App. 2020) (holding neighbor's post on internet forum accusing plaintiff of trespassing and vandalism on another neighbor's property did not concern matter of public interest because neither neighbor was in public eye, none of their acts affected large number of people, and post was part of tiff between neighbors that remained local and private); Abuemeira v. Stephens, 201 Cal. Rptr. 3d 437, 441 (Ct. App. 2016) (holding defendant-neighbors' publication of videorecording of altercation that resulted in criminal charges against plaintiff and neighbors' statements that video depicted hate crime against neighbors' sexual orientation were not statements on matters of public interest where charges were dismissed and dispute was private controversy).

¶ 29. Defendants argue that reports to police or courts of possible criminal activity must always be protected under the anti-SLAPP statute to avoid exposing victims to retaliatory litigation. Defendants essentially ask us to overrule Felis's holding that the "in connection with a

public issue" requirement must be met in any motion to strike, regardless of the type of activity alleged, but they offer no reasoned basis for us to do so. Moreover, we note that other sources of law provide victims with protection for good-faith reports of criminal activity. See, e.g., Talandar, 2024 VT 86, ¶¶ 22-25 (holding that absolute privilege for witness testimony in judicial proceeding barred plaintiff's defamation and IIED claims against defendant based on her statements to police, which resulted in plaintiff's arrest). Our conclusion that the specific statements and petitioning activity alleged here were not made in connection with a public issue means only that defendants are not entitled to have the associated claims stricken under § 1041 or to recover attorney's fees for filing the motion. Plaintiffs still have the difficult burden of proving their defamation, malicious prosecution, and IIED claims.

¶ 30.     Because defendants failed to demonstrate that their statements and activity were in connection with a public issue, their conduct was not protected by § 1041(a). We accordingly need not reach plaintiffs' arguments that defendants' statements lacked a factual or legal basis or harmed plaintiffs. We reverse the trial court's August 17, 2021 order and remand for further proceedings on the counts that were stricken.

## C.  Discovery Sanction

¶ 31.     Plaintiffs also challenge a discovery sanction imposed by the trial court. In September 2022, after the trial court granted the motion to strike, defendants served plaintiffs with interrogatories and requests for production related to plaintiffs' remaining defamation claim, which was premised on defendants' alleged statements to neighbors and community members accusing plaintiffs of being racist and discriminating against defendants on the basis of their national origin. Plaintiffs did not respond, despite defendants' repeated requests to counsel. In February 2023, defendants moved to compel plaintiffs to respond. The court granted the motion to compel, ordering plaintiffs to produce responses by March 31. Plaintiffs moved to extend the time to respond until April 30. The court granted that request but warned that no further extensions

16

of time would be granted. Plaintiffs did not timely produce the requested discovery, and on May 13, 2023, defendants moved for a sanction of dismissal.[6] The court denied defendants' request for dismissal but agreed that a sanction was appropriate because plaintiffs' conduct demonstrated a "cavalier disregard" for their discovery obligations and lack of respect for defendants and the court, and defendants had been prejudiced by the delay. It therefore prohibited plaintiffs from introducing at trial any evidence that plaintiffs should have disclosed in response to defendants' discovery requests.

¶ 32. Plaintiffs argue that the court abused its discretion in prohibiting them from introducing the evidence contained within their discovery responses at trial. They argue that this effectively amounted to a dismissal of their remaining defamation claim and that the court did not make findings sufficient to warrant a sanction of dismissal.

¶ 33. Vermont Rule of Civil Procedure 37(b) states that if a party fails to obey an order to provide discovery, the court "may make such orders in regard to the failure as are just," including "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence" or an order dismissing the action. V.R.C.P. 37(b)(2)(A)-(C). The imposition of discovery sanctions is "necessarily a matter of judicial discretion" and we will not disturb the court's decision "unless it is clearly shown that such discretion has been abused or withheld." Trevor v. Icon Legacy Custom Modular Homes, LLC, 2019 VT 54, ¶ 30, 210 Vt. 614, 217 A.3d 496 (quotations omitted).

¶ 34. "[W]here the ultimate sanction of dismissal is invoked, it is necessary that the trial court indicate by findings of fact that there has been bad faith or deliberate and willful disregard for the court's orders, and further, that the party seeking the sanction has been prejudiced thereby." John v. Med. Ctr. Hosp. of Vermont, Inc., 136 Vt. 517, 519, 394 A.2d 1134, 1135 (1978). But

---

[6] According to plaintiffs, they finally served their responses on June 2, 2023.

17

"[o]ur cases have carefully distinguished those cases where a sanction of dismissal or default is imposed from situations where the sanction effectively results in dismissal. Although a sanction may have a similar effect, no special findings are required when there is no outright dismissal or default." Stella ex rel. Estate of Stella v. Spaulding, 2013 VT 8, ¶ 22, 193 Vt. 226, 67 A.3d 247; see also State v. Howe Cleaners, Inc., 2010 VT 70, ¶ 22, 188 Vt. 303, 9 A.3d 276 ("[N]o special findings of bad faith or prejudice, or exhaustion of lesser sanctions, are required for anything less than the ultimate sanctions of dismissal or default.").

¶ 35. Where, as here, the sanction "precluded plaintiff from offering certain evidence, but was not a dismissal, no special findings were required." Stella, 2013 VT 8, ¶ 22. In Stella, we held that the trial court acted within its discretion in sanctioning plaintiff's failure to completely answer interrogatories by precluding the plaintiff from submitting evidence relating to those interrogatories "[g]iven plaintiff's failure to comply with the court's several orders to answer the interrogatories and to supplement the expert disclosure and the length of time that had passed." Id. ¶ 21. The same is true in this case: plaintiffs simply failed to respond to defendants' requests or the court's orders, despite having had nearly nine months to do so. Under these circumstances, the court did not abuse its discretion in sanctioning plaintiffs by prohibiting them from submitting evidence relating to those discovery requests.

¶ 36. Plaintiffs do not challenge the court's decision awarding summary judgment on the remaining defamation claim, which is supported by the record. "To survive a defendant's motion for summary judgment, the plaintiff must respond with specific facts to raise a triable issue and demonstrate sufficient admissible evidence to support a prima facie case." Gates v. Mack Molding Co., 2022 VT 24, ¶ 14, 216 Vt. 379, 279 A.3d 656. Plaintiffs failed to demonstrate that they had evidence to support their defamation claim. When they finally responded to defendants' interrogatories, they did not identify any specific defamatory statements or produce evidence of pecuniary loss, attorney's fees specifically attributable to the remaining claim, or other actual

18

harm.  See <u>Ryan v. Herald Ass'n, Inc.</u>, 152 Vt. 275, 277, 566 A.2d 1316, 1317 (1989) (describing elements of defamation claim); <u>Cate v. City of Burlington</u>, 2013 VT 64, ¶ 11, 194 Vt. 265, 270, 79 A.3d 854 ("A party opposing summary judgment may not rest on allegations or denials, but must demonstrate, with citations to the record, that a fact is genuinely disputed.").  Thus, even if plaintiffs had complied with their obligation to provide discovery responses in a timely manner, their responses indicated that they did not have sufficient evidence to support their remaining defamation claim, and summary judgment on that claim was appropriate.

The trial court's May 13, 2024 order awarding partial summary judgment is affirmed.  The trial court's August 17, 2021 order granting defendants' motion to strike is reversed and the matter is remanded for further proceedings on plaintiffs' remaining claims.

FOR THE COURT:

_____

Associate Justice