Filed 07/14/25

| VERMONT SUPERIOR COURT<br>Chittenden Unit<br>175 Main Street<br>Burlington VT 05402<br>802-863-3467<br>www.vermontjudiciary.org |  | CIVIL DIVISION<br>Case No. 25-CV-1196 |
|---|---|---|

| JOHN DOE,<br> Plaintiff<br><br> v.<br><br>TODD DELUCA and YOUTUBE, LLC,<br> Defendants | DECISION ON MOTION |
|---|---|

RULING ON DEFENDANT'S SPECIAL MOTION TO STRIKE

Plaintiff John Doe brings this action against Defendants Todd DeLuca and YouTube, LLC in connection with Mr. DeLuca's recording of a video of Mr. Doe and subsequent posting of that video on YouTube. Doe's Amended Complaint asserts claims for intentional infliction of emotional distress ("IIED"), invasion of privacy, and unlawful commercial exploitation against Mr. DeLuca and claims for "contributory infringement/liability," breach of contract, and violation of right of publicity against YouTube. Now pending, among other requests, is Mr. DeLuca's special motion to strike the Amended Complaint under Vermont's anti-SLAPP ("Strategic Lawsuits Against Public Participation") statute. For the reasons set forth below, the motion to strike is DENIED.[1]

Factual Background

The following facts are based on the "pleadings and supporting and opposing affidavits," 12 V.S.A. § 1041(e)(2), as well as the credible evidence presented at the preliminary injunction hearing. *See id*. § 1041(d).[2] Plaintiff is an individual experiencing homelessness in Burlington. Defendant Todd DeLuca is an individual who operates a YouTube channel called "Beautiful Scenic Burlington" and engages in the recording and distribution of video content. Mr. DeLuca's YouTube channel "documents life in Burlington . . . through public interest journalism." DeLuca Aff. ¶ 1. Defendant YouTube is a limited liability company that provides a platform for the distribution of video content accessible to residents of Vermont.

---

[1] Also pending are Rule 12(b)(6) motions to dismiss filed by both Defendants. Those motions will be addressed by the Court in a subsequent decision, once they are fully briefed.

[2] The statute requires "a hearing on a special motion to strike." 12 V.S.A. § 1041(d). The April 22, 2025 preliminary injunction hearing satisfies this requirement, and neither party has requested any further hearing. In any event, the statute does not require an *evidentiary* hearing. *See Talandar v. Manchester-Murphy*, 2024 VT 86, ¶¶ 38-40, 331 A.3d 1093.

On March 18, 2025, Mr. DeLuca stood on a public sidewalk outside of a homeless shelter and warming center known as COTS at 58 Pearl Street in Burlington, and recorded a video showing the front of the shelter and the people gathered there. The entire video was 29 minutes long. Plaintiff appears in the footage among a group of people waiting outside. At one point, Plaintiff addressed others gathered there about the legality of public recording and threatened to call the police. The camera appears to move closer to Plaintiff while he spoke. Mr. DeLuca did not directly respond to or engage with Plaintiff. Mr. DeLuca published the entire 29-minute video on YouTube and titled it "Visit the Overnight Shelter on Pearl Street." He also published a "short" video of no more than two minutes that included just the part with Plaintiff speaking about the legality of public recording. Plaintiff never gave Mr. DeLuca consent to record him or to publish the videos.

Plaintiff submitted a report to YouTube, asking it to remove the videos. As of the preliminary injunction hearing on April 22, YouTube had removed the videos, citing a privacy complaint. At the hearing, Mr. DeLuca testified that he could not publish the same video again without risking the suspension of his YouTube channel. Mr. DeLuca never received any money for those videos.

Discussion

Under Vermont's anti-SLAPP statute, a SLAPP suit is "an action arising from defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). The statute authorizes the defendant in an alleged SLAPP suit to bring a special motion to strike within 60 days after the filing of the complaint. *Id*. § 1041(b). The motion is decided on the "pleadings and supporting and opposing affidavits," *id*. § 1041(e)(2), and must be granted unless the plaintiff shows that "the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law" and "the defendant's acts caused actual injury to the plaintiff." *Id*. § 1041(e)(1)(A), (B).

"[T]he anti-SLAPP statute represents an 'attempt[ ] to define the proper intersection between two constitutional rights – a defendant's right to free speech and petition and a plaintiff's right to petition and free access to the courts.'" *Polak v. Ramirez-Diaz*, 2025 VT 9, ¶ 18, __ A.3d __ (quoting *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 41, 200 Vt. 465). Thus, "§ 1041 should be construed as limited in scope and [] great caution should be exercised in its interpretation." *Id*. (quotation omitted).

The Court must first determine whether this action is a SLAPP suit under the statute, that is, whether the action "ar[ose] from" Mr. DeLuca's exercise of his right to free speech in connection with a public issue. 12 V.S.A. § 1041(a). That threshold requirement may be satisfied by "any written or oral statement concerning an issue of public interest made in . . . a place open to the public" or "any other statement or conduct concerning a public issue or an issue of public interest that furthers the exercise of the constitutional right of freedom of speech or the constitutional right to petition the government for redress of grievances." *Id*. § 1041(i)(3)-(4). This determination typically depends on the nature of the allegations in the challenged claim. *See Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 4402431, at *32 (D. Vt. Sept. 29,

2

2017); *Rand Res., LLC v. City of Carson*, 433 P.3d 899, 907 (Cal. 2019); *Marabello v. Boston Bark Corp.*, 974 N.E.2d 636, 641-42 (Mass. 2012). Mr. DeLuca, as the party moving to strike the counterclaim, has the burden to satisfy this threshold requirement. *Cornelius v. The Chronicle, Inc.*, 2019 VT 4, ¶ 8, 209 Vt. 405.

The claims brought against Mr. DeLuca (IIED, invasion of privacy, and unlawful commercial exploitation) all stem from Mr. DeLuca's act of filming the outside of the COTS shelter and publishing that video on YouTube. The video depicts a number of people, presumably homeless or food-insecure individuals, gathering outside and waiting to enter the shelter for its 5 p.m. daily opening time.

First, to the extent Mr. DeLuca's actions here were akin to news reporting, that is of course entitled to First Amendment protection. *See, e.g.*, *Wolfe v. VT Digger*, 2023 VT 50, ¶ 22, 218 Vt. 408 (noting that "the four VT Digger articles challenged by plaintiff in this case involved speech"); *Cornelius*, 2019 VT 4, ¶ 10 ("As an initial matter, we conclude that newspaper was exercising a right of free speech by publishing the articles." (citing *Braun v. Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 63 (Ct. App. 1997) (explaining that news reporting "is free speech"))). Although Mr. DeLuca may not be a traditional or institutional journalist, "[t]he protections of the First Amendment do not turn on whether the defendant was a trained journalist, formally affiliated with traditional news entities, engaged in conflict-of-interest disclosure, went beyond just assembling others' writings, or tried to get both sides of a story." *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1291 (9th Cir. 2014). As the U.S. Supreme Court has explained: "With the advent of the Internet and the decline of print and broadcast media, moreover, the line between the media and others who wish to comment on political and social issues becomes far more blurred." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 352 (2010).

Even if Mr. DeLuca was not formally engaged in journalism, there is little question that recording and publishing a video of a public space is speech protected by the First Amendment. "The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy." *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021); *see also Davis v. Stratton*, 575 F. Supp. 2d 410, 421 (N.D.N.Y. 2008) ("[I]t has already been established in the Second Circuit that communicative photography is well-protected by the First Amendment. . . . [B]ecause Plaintiff intends to and does spread his message to the specific audience who views his web page over the internet, the videotapes are 'communicative' and therefore protected by the First Amendment." (citations and quotation omitted)), *rev'd and remanded on other grounds by* 360 F. App'x 182 (2d Cir. 2010), and *abrogated on other grounds by Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015). Moreover, "persons in public places are not ordinarily protected by considerations of privacy." *Davis*, 575 F. Supp. 2d at 422 (citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 212 (1975)).

The harder question is whether Mr. DeLuca's exercise of his right to free speech was "in connection with a public issue." 12 V.S.A. § 1041(a). Our Supreme Court has not addressed whether homelessness is a "public issue" as contemplated by the anti-SLAPP statute. The Court has observed, generally, that "matters connected to law enforcement investigation, public safety, and crime in the community are of public concern." *Talandar*, 2024 VT 86, ¶ 43 (quotation

3

omitted); s*ee also id*. (rejecting plaintiff's claim that defendant's report to police that plaintiff assaulted her did not concern a public issue); *Wolfe*, 2023 VT 50, ¶ 22 (holding that four newspaper articles challenged by plaintiff involved speech in connection with a public issue because they described plaintiff's threats toward Speaker of Vermont House of Representatives, his arrest at Statehouse, and his resulting criminal charges); *Cornelius*, 2019 VT 4, ¶ 1 (newspaper articles reporting that plaintiff and his brother threatened a parole officer and had been deemed a possible threat by law enforcement due to their lengthy criminal history and increasingly violent and erratic behavior, describing brothers' involvement in killing of an individual, and describing plaintiff's arraignment on charges of aiding in escape of his brother involved a public issue). But the Court has also refused to create a "blanket exemption" for reports of criminal activity. *Polak*, 2025 VT 9, ¶ 24. Thus in *Polak v. Ramirez-Diaz*, 2025 VT 9, ¶ 28, the Court concluded that defendants' statements to police regarding alleged assault and gun threatening incident were not made in a connection with a public issue where plaintiffs were not public figures and did not attract public interest, defendants' allegations "did not affect large numbers of people beyond themselves and plaintiffs," and there was "no indication that the statements occurred in the context of an ongoing public controversy or affected the community in a manner similar to a governmental entity." Further, "the fact that defendants repeated their allegations to others in the community did not transform them into a matter of public interest where the content of the statements concerned essentially a private dispute between neighbors." *Id*.; *see also Felis*, 2015 VT 129, ¶ 53 (divorce proceeding was not a matter of public significance).

It would not be a stretch to say that homelessness generally is a public issue in Vermont and especially in Burlington. It is a matter of common knowledge that homelessness has increased in recent years and has attracted widespread attention from the media, the legislature, and the general public. Indeed, over the last few years, this Court has had more than one case on its docket involving some aspect of homelessness. *See*, *e.g.*, *Groundworks Collaborative, Inc. v. Vt. Agency of Human Servs.*, 24-CV-999 (class action lawsuit against State regarding administration of motel voucher program); *Grundy v. City of Burlington*, 21-CV-3247 (involving City's ejectment of individuals from homeless encampment).

Other courts and authorities have generally observed that homelessness is an issue of public concern. *See*, *e.g.*, *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1242-43 (11th Cir. 2018) ("[T]he record demonstrates without dispute that the treatment of the City's homeless population is an issue of concern in the community. . . . It is also undisputed that the status of the City's homeless population attracted local news coverage beginning years before [] 2014 . . . ."); *Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 443 (S.D.N.Y. 2005) (flier by homeless advocacy non-profit that spoke of need to provide housing for those with HIV/AIDS "squarely implicate[d] matters of social and community concern"); *Lipkin v. George*, No. 3:23-CV-00127 (KAD), 2024 WL 1119958, at *6 (D. Conn. Mar. 14, 2024) ("speech concerning the care of a homeless person is a matter of public concern protected by the First Amendment"); *Food Not Bombs Houston v. City of Houston, Texas*, No. 4:24-CV-0338, 2024 WL 623913, at *4 (S.D. Tex. Feb. 14, 2024) (referencing "the fact that homelessness was an issue of public concern"). Indeed, homelessness has long been considered a substantial public issue. *See*, *e.g.*, *Asian Americans for Equal. v. Koch*, 14 N.Y.S.2d 939, 968 (App. Div. 1987), *aff'd*, 527 N.E.2d 265 (N.Y. 1988) (Carro, J., dissenting) ("Such conditions present a breeding

4

ground for homelessness, a matter presently recognized as of the utmost public concern."); Russell Engler, *Normalcy After 9/11: Public Service as the Crisis Fades*, 31 Fordham Urb. L.J. 983, 988 (2004) ("'During the 1980's, there was an enormous outpouring of public concern for the homeless. Newspaper articles carried frequent features depicting the plight of particular individuals or families.'" (quoting Maria Foscarinis, *Beyond Homelessness: Ethics, Advocacy, and Strategy*, 12 St. Louis U. Pub. L. Rev. 37, 41 (1993))).

But the fact that homelessness generally is widely recognized as a matter of public concern is not dispositive. Our Supreme Court has cautioned that, in the context of anti-SLAPP motions, "courts must focus on the specific statements in each case, including the circumstances in which they are made, to determine if they are made in connection with a public issue." *Polak*, 2025 VT 9, ¶ 25 (citing *Commonwealth Energy Corp. v. Inv. Data Exch., Inc.*, 1 Cal. Rptr. 3d 390, 395 (Ct. App. 2003) (explaining that determination of whether speech involves public issue for purposes of anti-SLAPP motion requires "examination of the *specific nature of the speech* rather than the generalities that might be abstracted from it")). As one California court has explained:

> The fact that a broad and amorphous public interest can be connected to a specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute. By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called synecdoche theory of public issue in the anti-SLAPP statute, where the part is considered synonymous with the greater whole. In evaluating the first prong of the anti-SLAPP statute, we must focus on the specific nature of the speech rather than the generalities that might be abstracted from it.

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 92 Cal. Rptr. 3d 227, 235 (Ct. App. 2009) (quotations and citations omitted) (holding that corporation's claims against former associates and competitor that defendants misappropriated trade secrets did not concern issue of public interest; although employee mobility was issue of public interest when considered in abstract, challenged statements were not designed to inform public of issue of public interest); *see also Time, Inc. v. Firestone*, 424 U.S. 448, 456 (1976) (rejecting notion that all reports of judicial proceedings concern matters of public interest because "[w]hatever their general validity, use of such subject-matter classifications to determine the extent of constitutional protection afforded defamatory falsehoods may too often result in an improper balance between the competing interests in this area"); *Campbell v. Campbell*, 234 N.E.3d 254, 255-56 (Ind. Ct. App. 2024) ("While domestic violence is of general public interest, that does not make every allegation of domestic violence a newsworthy event, particularly when, as here, the allegations concern private conduct by private individuals and attract no public interest on their own.").[3]

---

[3] The Vermont Supreme Court cited and quoted these cases with approval in *Polak*, 2025 VT 9, ¶ 25.

Here, the "speech" in question consists of a 29-minute video that depicts various individuals waiting outside of a homeless shelter and warming center. While the public certainly has an interest in the effectiveness of state- or federally-funded operations to assist those experiencing homelessness, the video does little to shed light on such operations. Instead, it merely shows individuals waiting outside of and then entering the COTS facility. It also shows one individual (Plaintiff) speaking for a couple minutes about his displeasure with Mr. DeLuca's filming and the legality of recording such events. While the "speech" challenged in this case bears some relation to homelessness generally, the Court cannot find Mr. DeLuca has demonstrated that "the specific statements [here], including the circumstances in which they [were] made," are "in connection with a public issue." *Polak*, 2025 VT 9, ¶ 25.

Accordingly, because Mr. DeLuca has failed to meet his initial burden to show that this action arises from his exercise of his right to free speech in connection with a public issue, his motion must be denied. *See id.*, ¶ 30 (holding defendants' "conduct was not protected by § 1041(a)" because defendants did not "demonstrate that their statements and activity were in connection with a public issue").

Order

For the foregoing reasons, Defendant DeLuca's Special Motion to Strike (Mot. #3) is DENIED.

Electronically signed on July 14, 2025 at 2:47 PM pursuant to V.R.E.F. 9(d).

Megan J. Shafritz
Superior Court Judge

6